T.C. Memo. 2010-47

UNITED STATES TAX COURT

GARY ALAN ADLER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 28454-07, 28455-07,      Filed March 16, 2010.
       28456-07, 28457-07.

From 1989 to 2006 P grew flowers and vegetables
for sale in greenhouses on the same property as his
personal residence.  From 1999 to the present, P's wife
sold rubber stamps and related products to stamping
hobbyists on commission.  P failed to timely file his
tax returns for the 2001 through 2004 tax years.  In
response, the IRS prepared substitutes for returns and
issued notices of deficiency to P for each of those
years.  In the notices of deficiency, the IRS
determined deficiencies and additions to tax under
I.R.C. sec. 6651(a)(1) and (2) and sec. 6654.  In 2008
P submitted to the IRS what he claimed were copies or
reconstructions of his timely filed joint tax returns
for the 2001 through 2004 tax years.  On those Forms
1040, which the IRS accepted as late-filed returns, P
claimed substantial losses from his greenhouse activity
and his wife's stamping activity.  P also claimed a
dependency exemption deduction under I.R.C. secs.
151(c) and 152(a) and education credits under I.R.C.

sec. 25A for his daughter for the 2001 through 2004 tax years and for his son-in-law for the 2002 through 2004 tax years.

Held: P is not entitled to deductions under I.R.C. sec. 162 for his greenhouse activity or his wife's stamping activity for the 2001 through 2004 tax years, because he failed to substantiate those deductions by adequate records or other evidence.

Held, further, P is not entitled to dependency exemption deductions and education credits for his daughter for the 2003 and 2004 tax years, or for his son-in-law for the 2002 through 2004 tax years, because he failed to substantiate those deductions and credits.

Held, further, P is entitled to calculate his tax at the rate provided in I.R.C. sec. 1(a)(1) for "Married Individuals Filing Joint Returns".

Held, further, for the 2001 through 2004 tax years, P is liable for additions to tax under I.R.C. secs. 6651(a)(1) and 6654, but not under sec. 6651(a)(2).

Gary Alan Adler, pro se.[1]

Kelly Anne Hicks, Gary J. Merken, and John A. Guarnieri, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GUSTAFSON, Judge: The Internal Revenue Service (IRS) issued to petitioner Gary Alan Adler four statutory notices of

---

[1]Harry J. Newman represented petitioner Gary Alan Adler at the trial of these cases. Mr. Newman withdrew as Mr. Adler's counsel on July 21, 2009. Thereafter, Mr. Adler has acted pro se.

deficiency in 2007,[2] pursuant to section 6212,[3] showing the IRS's determination of the following deficiencies in income tax and accompanying additions to tax for failure to file under section 6651(a)(1), failure to pay under section 6651(a)(2), and failure to pay estimated taxes under section 6654 for tax years 2001 through 2004:

| Tax | | Additions to Tax | | |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654 |
|------|-----------|-----------------|-----------------|-----------|
| 2001 | $14,500 | $3,257.78 | $3,619.75 | $578.56 |
| 2002 | 14,533 | 3,268.58 | 3,631.75 | 485.42 |
| 2003 | 93,268 | 20,971.13 | 18,641.00 | 2,438.99 |
| 2004 | 14,838 | 2,551.22 | 1,700.81 | 430.27 |

---

[2]The IRS issued the notices of deficiency for 2001, 2002, and 2003 on September 10, 2007, and the notice of deficiency for 2004 on October 18, 2007.

[3]Unless otherwise indicated, all citations of sections refer to the Internal Revenue Code of 1986 (26 U.S.C.), as amended, and all citations of Rules refer to the Tax Court Rules of Practice and Procedure.

After concessions,[4] the issues for decision[5] are: (i) whether Mr. Adler is entitled to deductions under section 162 for his greenhouse activity for the 2001 through 2004 tax years; (ii) whether Mr. Adler is entitled to deductions under section 162 for the stamping activity conducted by his wife Amelia N. Adler for the 2001 through 2004 tax years; (iii) whether Mr. Adler is entitled to dependency exemption deductions under sections 151(c) and 152(a) and education credits under section 25A for his daughter Justyn Adler Carbajal for the 2003 and 2004 tax years; (iv) whether Mr. Adler is entitled to dependency exemption deductions under sections 151(c) and 152(a) and

----

[4]Mr. Adler concedes the amounts of unreported income determined in the notices of deficiency. Respondent concedes Mr. Adler's claimed dependency exemption deductions under sections 151(c) and 152(a), education credits under section 25A, and child tax credits under section 24(a) for his daughter Justyn Adler Carbajal and his two minor children D.A. and W.A., for the 2001 and 2002 tax years. (It is the policy of this Court not to identify minors. We refer to Mr. Adler's two minor children by their initials. See Rule 27(a)(3).) Respondent concedes Mr. Adler's claimed dependency exemption deductions and child tax credits for his two minor children, DA and WA, for the 2003 and 2004 tax years. Respondent also concedes Mr. Adler's claimed loss of $923 from rental real estate for 2001 and short-term capital losses of $1,677.35 for 2003 and $3,000 for 2004. By conceding a short-term loss of $1,677.35 for 2003, respondent concedes an adjustment of $228,834 for "Stock and Bond Transaction Proceeds" that accounts for the bulk of the 2003 tax deficiency of $93,268.

[5]Respondent also contends that Mr. Adler's greenhouse activity and Mrs. Adler's stamping activity were not engaged in for profit, for purposes of section 183, so that the expenses are not deductible even if they were substantiated. Since we find that the expenses were not substantiated, we do not reach the section 183 issue.

education credits under section 25A for his son-in-law Cesar Carbajal for the 2002 through 2004 tax years; and (v) whether Mr. Adler is liable for additions to tax under section 6651(a)(1) or (2) or 6654 for the 2001 through 2004 tax years. On the facts proved at trial, Mr. Adler is not entitled to deductions, exemptions, or credits greater than respondent has conceded, and he is liable for the additions to tax under sections 6651(a)(1) and 6654.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts filed June 3, 2009, and the attached exhibits are incorporated herein by this reference.[6] Trial of these cases was held in Philadelphia, Pennsylvania, on June 3, 2009. Mr. Adler and Mrs. Adler both testified. Donna M. Gallagher, a paralegal at the IRS Office of Chief Counsel, testified as a witness for respondent with respect to Mr. Adler's filing history with the IRS.

---

[6]In his reply brief Mr. Adler makes a general assertion that the stipulation is incorrect. A party is bound by his stipulations unless he makes a showing that evidence contrary to the stipulation is substantial, or that the stipulation is clearly contrary to facts disclosed by the record, and that justice requires that the stipulation be qualified, changed, or contradicted in whole or in part. Rule 91(e); Niedringhaus v. Commissioner, 99 T.C. 202, 212 (1992). No such showing has been made here. To his briefs Mr. Adler attaches additional documents, but we disregard them because they were not offered at trial, because he has not shown how they relate to any stipulated fact that he now disputes, and because they do not appear to be admissible in any event.

Mr. Adler's Livelihood

Mr. Adler was employed by the Federal Government as a systems engineer at the Picitinny Federal Arsenal in Picitinny, New Jersey for 37 years--including all of the tax years at issue--before he retired in 2006.  As a systems engineer, Mr. Adler earned taxable wages in the following amounts during the years in issue:

| Year | Amount |
|------|--------|
| 2001 | $68,132 |
| 2002 | 71,239 |
| 2003 | 76,913 |
| 2004 | 78,630 |

Mr. Adler's Residence

In December 1987 Mr. Adler moved from Branchville, New Jersey, to Stroudsburg, Pennsylvania, where he purchased a five-bedroom colonial Moravian stone house on 8.414 acres of land for $290,000.  When Mr. Adler purchased the property, there were also a two-bedroom ranch house, a one-bedroom cottage, a garage, a barn, and a small greenhouse on the same tract.  Mr. Adler lived in the five-bedroom house from 1987 to the present.  He rented the ranch house, the cottage, and the garage in Stroudsburg as well as a third house in Deltona, Florida.

Mr. Adler's Greenhouse Activity

In 1988 the Adlers began to use the small greenhouse on their property to grow flowers and vegetables for themselves. The Adlers were so successful in this endeavor that they grew a surplus. At first the Adlers gave away that surplus to their neighbors, but they eventually sold the extra flowers and vegetables. In 1989 the Adlers began to take advance orders for flowers and vegetables from local businesses and organizations, and those orders quickly exceeded the capacity of their small greenhouse. In response, Mr. Adler added a 10-foot extension to the greenhouse. In 1990, Mr. Adler purchased and erected a second greenhouse. By the tax years at issue, Mr. Adler had purchased and erected two more greenhouses, his third and fourth.

The small greenhouse originally had an oil-fired boiler. Mr. Adler used that boiler to heat both the small greenhouse itself and the water that flowed through the network of copper pipes that ran underneath the benches in that greenhouse and watered his crop of flowers and vegetables. In 1998 the oil-fired boiler started to leak and Mr. Adler replaced it with an electric boiler. By 2001 Mr. Adler used the electric boiler to heat the water that flowed through all four of his greenhouses.

In the spring of 2001, a storm hit Stroudsburg, Pennsylvania, and caused a power outage on Mr. Adler's property. This power outage shut down the electric boiler, which in turn,

froze and cracked.  Without the boiler, Mr. Adler was unable to water the flowers and vegetables in any of his greenhouses. Since Mr. Adler never repaired or replaced the boiler, he lost the bulk of his crop in 2001.

Initially, Mr. and Mrs. Adler conducted the greenhouse activity with their daughter Justyn.  However, in 2000 Justyn graduated from high school, began college, and ceased to participate in the greenhouse activity.  After the loss of their electric boiler and their third worker, the Adlers decided to scale back their operation.  With the exception of caring for a few perennials,[7] the Adlers stopped growing plants in 2001.  From 2001 to 2006, the Adlers sold "minimal amounts" of plants, which they viewed as a "going out of business sale."  Mr. Adler alleges, and we find, that the greenhouse activity generated gross receipts in the following amounts for the years in suit:

| Year | Amount |
| --- | --- |
| 2001 | ($431) |
| 2002 | 1,000 |
| 2003 | 500 |
| 2004 | 500 |

---

[7]Perennials are "herbaceous plants that produce flowers and seed from the same root structure year after year".  Webster's New World College Dictionary 1069 (4th ed. 2008).

Non-Substantiation of Greenhouse Expenses

On late-filed returns (discussed below), Mr. Adler claimed deductions for the following expenses of the greenhouse activity, which total about $40,000 for the four years in issue:

| Expense | 2001 | 2002 | 2003 | 2004 |
|---|---|---|---|---|
| Car & truck expenses | $1,926 | --- | --- | --- |
| Depreciation | 5,774 | $664.54 | $428.40 | $428.40 |
| Gas, fuel, and oil | 15 | --- | --- | --- |
| Insurance | --- | 486.84 | --- | --- |
| Mortgage interest | 3,071 | 3,792.45 | --- | --- |
| Taxes | 4,371 | 3,721.80 | 4,073.62 | 4,135.76 |
| Utilities | 2,804 | --- | --- | --- |
| Postage | 16 | --- | --- | --- |
| Office supplies | 1,088 | --- | --- | --- |
| Misc. | 492 | --- | --- | --- |
| Casualty loss (boiler) | 2,995 | --- | --- | --- |
| Total expenses | 22,552 | 8,665.63 | 4,502.02 | 4,564.16 |

However, at trial Mr. Adler did not offer evidence to substantiate deductible expenses of his greenhouse activity in any amount.[8]  See infra part II.A.

_____

[8]It should be noted that the IRS gave Mr. Adler the equivalent of a deduction to the extent of his income from his greenhouse activity, because the notices of deficiency did not include in his gross income the gross receipts from that activity.  This treatment is equivalent to the treatment for substantiated deductions in activities not engaged in for profit pursuant to section 183(b)(2).

Mrs. Adler's Stamping Activity

In September 1999 Mrs. Adler began to sell rubber stamps and related products to stamping[9] hobbyists. Mrs. Adler sold the stamps for a 20-percent commission as an agent--with the title of "demonstrator"--for a multi-level marketing agency named "Stampin' Up!". In addition, Mrs. Adler received a percentage of the sales of any demonstrators that she recruited to work for the agency.

During the tax years at issue, Mrs. Adler generated sales in two ways. First, Mrs. Adler hosted stamping parties at her customers' homes, where she would demonstrate how to make greeting cards and scrapbooks with the stamping products. Second, Mrs. Adler formed stamping clubs for her customers, in which members committed to meet and purchase more stamping products each month. Mr. Adler alleges, and we find, that his wife's stamping activity generated gross receipts in the following amounts for the years in issue:

| Year | Amount |
|------|--------|
| 2001 | $1,326 |
| 2002 | 2,239 |
| 2003 | 3,301 |
| 2004 | 3,298 |

---

[9]The term "stamping" refers to the use of rubber stamps to craft greeting cards and scrapbooks.

Non-Substantiation of Stamping Expenses

On his late-filed returns Mr. Adler claimed deductions for
the following expenses of Mrs. Adler's stamping activity, which
total about $29,000 for the four years in issue:

| Expense | 2001 | 2002 | 2003 | 2004 |
|---|---|---|---|---|
| Car & truck expenses | $609 | --- | $945.78 | --- |
| Depreciation | 1,217 | $7,558.60 | 7,558.60 | $7,558.60 |
| Supplies | --- | --- | 679.70 | --- |
| Travel | 1,745 | --- | 762.88 | --- |
| Total expenses | 3,571 | 7,558.60 | 9,947.02 | 7,558.60 |

However, at trial Mr. Adler did not offer evidence to
substantiate deductible expenses of this activity in any
amount.[10]  See infra part III.

Sources of Support for Daughter and Son-in-Law

In 2000 Mr. and Mrs. Adler's daughter Justyn graduated from
high school and left her parents' home in Stroudsburg,
Pennsylvania, to attend Murray State University in Murray,
Kentucky.  During the tax years at issue, Justyn lived with her
parents only during the summers of 2001, 2002, and 2004.  While
at college, Justyn participated in a work study program and

---

[10]It should be noted that, as with the greenhouse activity,
see supra note 8, the IRS gave Mr. Adler the equivalent of a
deduction to the extent of his income from his wife's stamping
activity, because the notices of deficiency did not include the
gross receipts from that activity in his gross income.

received various grants and scholarships. However, the record does not show the amounts of support that she received from her work study, grants, and scholarships, the nature of her scholarships, or whether she had other sources of support. We therefore find that Mr. Adler failed to establish the total amount of support for Justyn during the tax years at issue or his portion of that support.

On February 5, 2002, Justyn married Cesar Carbajal, who was a student at the Rose-Hulman Institute of Technology in Terre Haute, Indiana. While at college, Cesar participated in a work study program, received various grants and scholarships, took out student loans, and received money from his father. In addition, Mr. Adler paid for Cesar's car insurance after he married Justyn. However, the record does not show the amount of support that Cesar received from each of these sources, the nature of his scholarships, or whether he had other sources of support. In his post-trial briefs Mr. Adler suggests amounts of support, but there is no evidence in the record to substantiate his assertions. We therefore find that Mr. Adler failed to establish the total amount of support for Cesar during the tax years at issue or his portion of that support.

<u>Substitutes for Returns and Notices of Deficiency</u>

In July 2007, in response to Mr. Adler's failure to timely file his Forms 1040, U.S. Individual Income Tax Return, for the

tax years at issue, the IRS prepared for Mr. Adler a substitute for return for each of those years, pursuant to section 6020(b). On those substitutes for returns, the IRS used the status of married filing separately, included the income reported by Mr. Adler's employer, applied the standard deduction, and did not allow any other deductions. In addition, the IRS did not include (because it was not aware of) the gross receipts from Mr. Adler's greenhouse activity or from his wife's stamping activity in his gross income. The record does not show that any substitutes for returns were prepared for Mrs. Adler. Each of the four substitutes for returns for Mr. Adler consisted of a Form 4549, Income Tax Examination Changes, Form 886-A, Explanation of Items, and Form 13496, IRC Section 6020(b) Certification. Neither the Forms 13496 nor the other forms were signed by an officer or employee of the IRS.

On the basis of those substitutes for returns, the IRS mailed to Mr. Adler (not to Mrs. Adler) four notices of deficiency in the fall of 2007. Like the substitutes for returns, the notices of deficiency used a filing status of married filing separately, did not allow any deductions for Mr. Adler's greenhouse activity or for his wife's stamping activity, and did not include the gross receipts from those activities in his gross income. In response to the notices of deficiency, Mr. Adler petitioned this Court, pursuant to section

6213(a), to redetermine his deficiencies.  At the time that he filed his petition, Mr. Adler resided in Pennsylvania.

The Late Filing of Mr. Adler's Forms 1040

On March 17, 2008, Mr. Adler submitted to the IRS Office of Appeals what he claims was a copy of his and Mrs. Adler's timely filed joint Form 1040 for the 2001 tax year.  On March 31, 2008, Mr. Adler submitted to the Office of Appeals what he claims were reconstructions of his and Mrs. Adler's timely filed joint Forms 1040 for the 2002 through 2004 tax years.  The IRS treated these purported copies and reconstructions as late-filed Forms 1040 for the tax years at issue.

On his late-filed Forms 1040, Mr. Adler reported the items of income and expense for his greenhouse activity that are set out above, yielding reported net losses as follows:

| Item | 2001 | 2002 | 2003 | 2004 |
|------|------|------|------|------|
| Gross receipts | ($431) | $1,000.00 | $500.00 | $500.00 |
| Total expenses | 22,552 | 8,665.63 | 4,502.02 | 4,564.16 |
| Net loss | (22,983) | (7,665.63) | (4,002.02) | (4,064.16) |

On those late-filed returns Mr. Adler also reported the following items of income and expense for Mrs. Adler's stamping

activity that are set out above, yielding reported net losses as follows:

| Item | 2001 | 2002 | 2003 | 2004 |
|------|------|------|------|------|
| Gross receipts | $1,326 | $2,239.31 | $3,301.38 | $3,297.93 |
| Total expenses | 3,571 | 7,558.60 | 9,947.02 | 7,558.60 |
| Net loss | (2,245) | (5,319.29) | (6,645.64) | (4,260.67) |

Mr. Adler claimed a dependency exemption deduction and an education credit for his daughter Justyn and for two minor children, D.A. and W.A., on each of his late-filed returns for the 2001 through 2004 tax years.  Mr. Adler also claimed a dependency exemption deduction and an education credit for his daughter's husband, Cesar Carbajal, on each of his late-filed returns for the 2002 through 2004 tax years.

At trial Mr. Adler continued to insist that he had timely filed his Forms 1040 for the tax years at issue and that the IRS must have lost all four of them.

We find, however, for the reasons explained below in part IV.A, that Mr. Adler failed to timely file his Forms 1040 for the 2001 through 2004 tax years.

OPINION

I.   Burden of Proof

At issue is Mr. Adler's entitlement to (i) deductions for business expenses and (ii) deductions and credits for dependents. Deductions and credits are a matter of legislative grace, and the

taxpayer bears the burden of proving that he is entitled to any deduction or credit claimed. Rule 142(a); see also Deputy v. du Pont, 308 U.S. 488, 493 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). The Court had occasion to emphasize to Mr. Adler that he bore that burden. These cases were originally scheduled to be tried in February 2009, but Mr. Adler requested a continuance and the Court granted it, over respondent's objection. Both in a telephone conference with the parties and in its order of February 20, 2009--

> The Court reminded petitioner that he bears the burden of proof in this case, that the Court will require him to bear that burden on June 1, and that he should actively cooperate with the IRS in exchanging documents, finalizing a stipulation, and otherwise preparing the case for trial.

However, Mr. Adler makes two unsuccessful attempts to shift this burden. First, Mr. Adler invokes the principle embodied in Rule 142(a)(1) that "in respect of any * * * increases in deficiency, * * * [the burden] shall be upon the respondent." Since the deficiency amounts stated in the statutory notice of deficiency are greater than amounts that IRS personnel allegedly communicated to him on a later occasion,[11] Mr. Adler argues that the greater amounts constitute "increases in deficiency" for

---

[11]Mr. Adler alleges that lesser amounts were stated "in August 2008 on IRS Form 5278 in accordance with Internal Revenue Manual Section 8.7.10.16(5)." The cited provision of the Internal Revenue Manual concerns "Individual Retirement Account Adjustments". No Forms 5278, Statement--Income Tax Changes, are in evidence.

purposes of the burden of proof.  However, in so arguing he misunderstands the Rule and the nature of a notice of deficiency. Generally, the Commissioner's determination in the notice of deficiency is presumed to be correct, and the taxpayer bears the burden of proving that the Commissioner's determination is erroneous.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Increases in deficiency shift the burden of proof to the Commissioner only if and to the extent that those increases cause the deficiency to exceed the amounts stated in the notice of deficiency.  Rule 142(a).  Respondent does not allege a deficiency for any year greater than the amounts stated in the notice of deficiency for that year, and the exception stated in Rule 142(a)(1) does not apply.

Second, even where the burden of proof is otherwise on the taxpayer, it may shift to the Commissioner under section 7491(a)(1) if the taxpayer produces credible evidence with respect to any factual issue relevant to ascertaining the taxpayer's tax liability; and Mr. Adler contends that he has satisfied the requirements of section 7491(a) to shift the burden of proof to respondent with respect to his greenhouse activity and his wife's stamping activity.  In fact, Mr. Adler has not produced credible evidence with respect to any factual issue, as we show below.

Moreover, section 7491(a)(2)(A) provides that the burden of proof will shift with respect to an issue only if "the taxpayer has complied with the requirements under this title to substantiate any item".  Section 6001 requires that--

> Every person liable for any tax imposed by this title, or for the collection thereof, shall keep such records, render such statements, make such returns, and comply with such rules and regulations as the Secretary may from time to time prescribe. * * *

Taxpayers are thus required to keep records.  Mr. Adler insists, however, that a taxpayer is required to keep records for only four years; and since the latest year at issue is 2004, and his trial took place in 2009--more than four years later--his non-retention of records should not be held against him.  For this four-year rule Mr. Adler cites a provision in part 31 of the regulations--i.e., 26 C.F.R. section <u>31</u>.6001-1(e)(2), Employment Tax Regs.--and berates respondent's counsel for not yielding the point.[12]  It would be odd if a taxpayer could fail to file returns but escape the burden of proof if his trial did not take place within four years; but in fact the tax law does not reflect

---

[12]See Petr.'s Reply Brief 40-41 ("Treasury Reg. 26 CFR 31.6001-1(e)(2) specifies four years.  Why can't she read.  This was cited in Petitioner's brief on page 21 but Respondent's Counsel states in note 6 that Petitioner cited no authority for his position.  Here yet again is a Rule 406 lie"). Section 31.6001-1(e)(2), Employment Tax Regs., provides, for <u>employment</u> taxes, that "every person required by the regulations in this part to keep records in respect of a tax * * * shall maintain such records for at least four years after the due date of such tax for the return period to which the records relate, or the date such tax is paid, whichever is the later."

such an oddity.  Rather, part 31 of the regulations relates to

employment taxes, whereas this case concerns income tax.  The

income tax rule that actually applies here is from part 1 of the

regulations--i.e., 26 C.F.R. section 1.6001-1(e), Income Tax

Regs.--and it provides:

> (e)  Retention of records.--The books or records required by this section shall be kept at all times available for inspection by authorized internal revenue officers or employees, and shall be retained so long as the contents thereof may become material in the administration of any internal revenue law.  [Emphasis added.]

A taxpayer's books and records for a given tax year "may become

material" for purposes of section 6001 so long as the period of

limitations on assessment for that year remains open under

section 6501.  Since the period of limitations is still open with

respect to the tax years at issue,[13] Mr. Adler was required to

retain his books and records with respect to those years.  In

this case Mr. Adler bears the burden of proof, and that burden

has not shifted.  As is discussed below, Mr. Adler has failed to

maintain sufficient records to substantiate his expenses with

respect to his greenhouse activity and his wife's stamping

activity.

---

[13]The period of limitations for assessment was open with respect to all four of the tax years at issue in 2007 when the IRS issued the notices of deficiency to Mr. Adler, because he filed no returns with respect to those years until 2008.  See sec. 6501(c)(3).  The period of limitations will remain open for a minimum of 60 days after the decision of this Court becomes final.  See secs. 6213(a), 6503(a).

II.  Mr. Adler's Greenhouse Activity

Section 162(a) allows a deduction for all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business.  However, respondent contends that Mr. Adler's claimed deductions under section 162 for net losses from his greenhouse activity must be disallowed because he failed to carry his burden of proof by substantiating those deductions.

A.    Lack of Substantiation

Respondent is correct that Mr. Adler did not corroborate his testimony with sufficient records or other evidence to substantiate his claimed deductions from the greenhouse activity, which total about $39,000 over the four years in issue.  Mr. Adler did not submit into evidence a general journal, cash receipts and disbursements journal, or any ledger accounts for his greenhouse activity.  Instead, Mr. Adler submitted into evidence (i) detailed drawings of his greenhouses, (ii) seed catalogs that he allegedly used to order seeds for his greenhouse activity, (iii) executed contracts between his farm and licensors to grow and sell particular brands of flowers, (iv) seeding schedules for 1995 and 1996, (v) undated seedling and transplanting schedules, (vi) an undated yellow page ad for his farm, (vii) commercial automobile insurance bills for some of the periods during the tax years at issue for an Econoline truck that

was allegedly used to make deliveries in the greenhouse activity, and (viii) one page of an unsigned receipt, dated August 20, 1998, that lists various boiler parts with accompanying prices. These documents did not prove deductible expenditures in the years in issue.

With respect to the alleged utilities expense, Mr. Adler failed to submit into evidence any utility bills or other documentation to substantiate that he paid for utilities.  In addition, Mr. Adler failed to provide this Court with any basis in fact to determine the ratio of business to personal use of electricity, water, or other utilities on his property. Accordingly, we find that Mr. Adler failed to substantiate his utilities expense.

With respect to the casualty loss for the destruction of his electric boiler, Mr. Adler submitted one page of an unsigned receipt that lists various boiler parts with accompanying prices. The page is clearly incomplete, because the phrase "Continued on Next Page" is printed at the bottom.  Although Mr. Adler alleges that the page constitutes a portion of the receipt for the electric boiler he purchased in 1998, it is impossible to discern the truth of that allegation from the page alone.  An unsigned and incomplete list of boiler parts with accompanying prices is insufficient evidence to prove that an entire boiler was purchased or the price of that boiler.  Accordingly, we find that

Mr. Adler failed to substantiate the amount, if any, of his casualty loss.

With respect to the alleged depreciation expenses, Mr. Adler failed to submit into evidence any depreciation schedules or other documentation to substantiate his deductions. While Mr. Adler substantiated the total amount he paid in December 1987 for his property, which included the small greenhouse, he failed to provide this Court with any basis in fact to allocate that price and his resultant basis among the small greenhouse and the rest of his property. In addition, Mr. Adler failed to substantiate the cost of purchasing and erecting the second, third, and fourth greenhouses. Accordingly, we find that Mr. Adler failed to substantiate his depreciation expenses.

With respect to the alleged car and truck expenses, Mr. Adler failed to submit into evidence any documentation to substantiate the business use of any vehicle in his greenhouse activity. Moreover, the only plausible business use in the instant cases is transporting plants and related items to and from suppliers and customers. Since Mr. Adler ceased growing plants in the spring of 2001 and reports revenues totaling only $2,000 for the four years 2001 through 2004, it is unlikely that he incurred significant transportation expenses during 2001 or later years. Mr. Adler's contention that his car and truck expenses in 2001 exceeded his gross receipts for all four of the

tax years at issue is not credible. Accordingly, we find that Mr. Adler failed to substantiate his car and truck expenses.

With respect to the alleged insurance expense, Mr. Adler failed to submit into evidence sufficient documentation to substantiate his deductions. Mr. Adler provided commercial automobile insurance bills for an Econoline truck for some of the periods during the tax years at issue. However, Mr. Adler failed to provided a complete set of bills or any proof that he paid the bills. Moreover, as noted above, Mr. Adler failed to substantiate the business use of any vehicle in his greenhouse activity. As a result, he failed to substantiate the business purpose of the insurance expense. Accordingly, we find that Mr. Adler failed to substantiate his insurance expense.

Mr. Adler similarly failed to submit into evidence any documentation to substantiate that he used any gas, fuel, or oil, that he paid for any postage, that he paid any mortgage interest or property taxes, or that he paid for any office supplies, or that he incurred any miscellaneous expenses for his greenhouse activity.

B. <u>Records Lost or Destroyed</u>

Having failed to produce sufficient records, Mr. Adler alleges that he should be excused from producing his greenhouse activity records because some of those records were destroyed in 2006 by a flood in his basement. "It is well established that

the Tax Court may permit a taxpayer to substantiate deductions through secondary evidence where the underlying documents have been unintentionally lost or destroyed." Davis v. Commissioner, T.C. Memo. 2006-272.  However, Mr. Adler bears the burden of proving both that a flood occurred and that his records were destroyed by that flood.  See Rule 142(a)(1).

Mr. Adler's evidence fails to make that showing.  He testified that he kept paper records of his greenhouse activity in his basement and also in his home office, which was in one of the five bedrooms in his home.  More specifically, Mr. Adler testified that his home office "wouldn't hold everything," so he stored the records that he used less frequently in cardboard boxes on the floor of his basement.  However, Mr. Adler testified that those records were destroyed in August 2006 by a flood in his basement.  He testified that the flood resulted from a heavy rain that caused water to seep through the gravel floor of his basement.  Mr. Adler submitted into evidence, as proof of the flood in 2006, nine recent photographs of his basement that showed several items therein, including a water heater, that are heavily rusted.  However, in 2006 he did not make any claims to insurance companies or third parties with respect to the damage caused by the flood.  We find that he did not prove that a flood occurred.  His nine recent photographs of rusty items in his basement do not show that a flood occurred, or when it occurred.

Even assuming arguendo that a flood did occur in the basement in 2006, Mr. Adler did not credibly testify that he kept the relevant records in his basement at that time. Instead, Mr. Adler testified expressly that he was unsure which greenhouse activity records were destroyed in his basement, because he stored some of his records in his home office, which he has yet to review and catalog:

> I should have taken a picture of the office. You'd understand. My wife refers to it as the black hole. Things go in, and they never come out, and I still have boxes in there that I have not looked through. There's boxes under tables. I haven't had a chance to go through them yet, so I still might come up with another receipt or something that for some reason never got filed away, and it's just stuck there in a pile. I don't even have a filing system.

Moreover, even assuming arguendo that a flood did occur and that the flood destroyed the relevant records, Mr. Adler has not provided us with sufficient "secondary evidence" to substantiate his claimed deductions. See Davis v. Commissioner, supra. Neither Mr. Adler's testimony nor the drawings, catalogs, contracts, crop schedules, ads, and insurance bills he submitted into evidence provide us with a basis to estimate the allowable expenses of his greenhouse activity for the tax years at issue.[14] We find that Mr. Adler's testimony and other evidence is

_____

[14]Mr. Adler's testimony and other evidence do not establish either the amounts of his expenses with respect to the greenhouse activity or the ratio of business to personal use of his property and equipment.

insufficient to meet the substantiation requirements of section 6001.[15]

Somewhat at odds with his contention that he lost his records in a flood, Mr. Adler also argues in his reply brief that he did substantiate his expenses by providing to the IRS, at some time before the trial of this case, "nine boxes of information", amounting to an estimated "22000 pages of records". However, he did not offer these records into evidence at trial, nor did he offer any proof about the contents of any documents he had provided to the IRS. These cases must be decided on the basis of evidence offered at the trial, and Mr. Adler cannot now cure the gaps in his proof by allegations of evidence not offered.

Accordingly, we hold that Mr. Adler is not entitled to any deduction under section 162 (beyond what the IRS has allowed, see supra note 8) for his greenhouse activity for the 2001 through 2004 tax years.

III. Mrs. Adler's Stamping Activity

Respondent contends that Mr. Adler's claimed deductions for alleged expenditures totaling $28,000 from his wife's stamping activity--90 percent of which are attributable to the alleged use

---

[15]The Court may estimate allowable expenses under Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930), but only if there is sufficient evidence in the record to provide a basis for the estimate, Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985), and the substantiation requirements under section 274(d) do not apply.

of her sport utility vehicle (for which Mr. Adler claimed deductions for "Car & truck expenses" and depreciation)--must be disallowed because he failed to substantiate those deductions. Respondent is correct. As we stated above, section 162(a) allows a deduction for all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business, but section 6001 requires the taxpayer to maintain records sufficient to substantiate his claimed deductions. In addition, section 274(d) imposes stringent substantiation requirements for claimed deductions relating to the use of "listed property", which is defined under section 280F(d)(4)(A)(i) to include passenger automobiles. Under this provision any deduction claimed with respect to the use of a passenger automobile, such as Mrs. Adler's 2001 GMC Yukon XL sport utility vehicle, will be disallowed unless the taxpayer substantiates specified elements of the use by adequate records or by sufficient evidence corroborating the taxpayer's own statement. See sec. 274(d); sec. 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

The elements that must be substantiated to deduct the business use of an automobile are: (i) the amount of the expenditure; (ii) the mileage for each business use of the automobile and the total mileage for all uses of the automobile during the taxable period; (iii) the date of the business use;

and (iv) the business purpose of the use of the automobile.  See sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

Mrs. Adler testified that she drove to her stamping events and delivered products in her 2001 GMC Yukon XL sport utility vehicle.  However, Mrs. Adler failed to maintain records and documentation for the business use of the sport utility vehicle in her stamping activity.

Mrs. Adler testified that she incurred supplies expenses, because she needed to purchase and use some products as free samples during her stamping parties.  In addition, Mrs. Adler testified that she incurred travel expenses in July 2001, July 2002, July 2003, and July 2004 to attend the agency's annual training convention for its demonstrators, during which she took business classes and was introduced to the agency's new products. Mrs. Adler also testified that she incurred travel expenses to attend other trade shows and seminars in furtherance of her stamping activity.  However, Mr. Adler did not offer into evidence receipts, canceled checks, invoices, bank statements, or credit card statements showing these expenditures, and Mrs. Adler did not keep or maintain a general journal, cash receipts and disbursements journal, or any ledger accounts for her stamping activity.  The only records that Mr. Adler submitted into evidence with respect to his wife's stamping activity were (i)

two registration confirmation printouts for a stamping tradeshow called "Memories Expo" in 2001 and 2002, and (ii) a handful of hotel bills which Mrs. Adler testified were incurred to attend various stamping events--the names, dates, locations, and purposes of which she did not describe in any detail.

Thus, not only did Mr. Adler fail to meet the more stringent substantiation requirements under section 274(d) for the deductions relating to the alleged business use of Mrs. Adler's sport utility vehicle,[16] but he also failed even to provide sufficient records or other evidence under the less demanding standard of section 6001 to substantiate any of his claimed deductions for his wife's stamping activity. In fact, with the exception of a handful of registration confirmation printouts for stamping trade shows and hotel bills purportedly incurred for business travel, Mr. Adler submitted no records whatsoever to substantiate the expenses incurred in his wife's stamping activity. Instead, Mr. Adler stipulated (i) that his "wife failed to maintain records and documentation for the claimed business use of the 2001 GMC Yukon XL sport utility vehicle in

_____

[16]It should also be noted that Mr. Adler claimed deductions relating to the alleged business use of Mrs. Adler's sport utility vehicle as if the business use (versus personal use) percentage for that vehicle was 100 percent. At trial Mrs. Adler contradicted the claim that her sport utility vehicle was solely used in her stamping activity and testified that the business use percentage for that vehicle was "45 to 50" percent.

her Schedule C stamps activity",[17] and (ii) that his "wife did not keep or maintain a general journal, cash receipts and disbursements journal, or any ledger accounts for her Schedule C stamps activity."

We find that Mr. and Mrs. Adler's uncorroborated testimony is insufficient to meet the substantiation requirements of sections 274(d) and 6001. Accordingly, we hold that Mr. Adler is not entitled to any deduction under section 162 (beyond what the IRS has allowed, see supra note 10) for Mrs. Adler's stamping activity for the 2001 through 2004 tax years.

## IV. Deductions and Credits for Dependents

### A. Dependency Exemption Deduction

Section 151(c) allows a taxpayer to deduct an annual exemption amount for each dependent of the taxpayer. Section 152(a) defines the term "dependent", in pertinent part, to include a "daughter" or "son-in-law". Sec. 152(a)(1), (8). Mr. Adler claimed a dependency exemption deduction for his daughter Justyn for tax years 2001 through 2004, and for his son-in-law

---

[17]It should be noted that Mr. Adler does not contend that Mrs. Adler lost any records from her stamping activity in the alleged basement flood. At trial, when Mr. Adler was asked, "[w]ere there any documents of your wife's that were destroyed in the basement", he responded, "None of her stuff was stored in the basement." Consequently, the exception to the stringent substantiation requirements under section 274(d) for records lost through circumstances beyond the taxpayer's control in section 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985), is not applicable to Mrs. Adler's stamping activity.

Cesar for tax years 2002 through 2004. Respondent contends that the dependency exemption deduction must be disallowed for Justyn for tax years 2003 and 2004 and for Cesar for tax years 2002 through 2004. To prevail on this issue, Mr. Adler must show: (i) that each of the claimed individuals satisfies the definitional requirements provided in section 152(a) (the relationship requirement); (ii) the amount of total support provided for each of the claimed individuals; and (iii) that he provided more than half of such support (taken together, the support requirement). See secs. 151(c)(1)(A), 152(a).

Justyn and Cesar both satisfy the relationship requirement. Specifically, Justyn is Mr. Adler's daughter, and Cesar was Mr. Adler's son-in-law during the tax years at issue. Accordingly, the only issues are the amounts of the total support for Justyn in the 2003 and 2004 tax years and for Cesar in the 2002 through 2004 tax years, and whether Mr. Adler provided more than one-half of that support.

For this purpose, "support" is defined as including food, shelter, clothing, medical and dental care, education, etc. See sec. 1.152-1(a)(2)(i), Income Tax Regs. However, "support" is defined to exclude certain "scholarships". See sec. 1.152-1(c), Income Tax Regs. Section 152(d) sets forth a "Special Support Test in Case of Students," which provides, that in the case of any individual who is "a son, stepson, daughter, or stepdaughter

of the taxpayer" and who is a "student", "amounts received as scholarships for study at an educational organization described in section 170(b)(1)(A)(ii) shall not be taken into account" in determining the total amount of support for the individual. Since section 152(d)(1) applies the special support test to a daughter, but not a son-in-law, section 152(d) potentially applies to Justyn, but not Cesar. It appears that Justyn is a "student" within the meaning of section 1.151-3(b), Income Tax Regs.,[18] and that Murray State University is an educational organization within the meaning of section 170(b)(1)(A)(ii).[19] However, Mr. Adler has not alleged, nor does the record show, that the scholarships Justyn received constitute "scholarships" for purposes of section 152(d). Section 1.152-1(c), Income Tax Regs., cross-references section 1.117-4, Income Tax Regs., which excludes from the definition of "scholarships" "[a]mounts paid as compensation for services or primarily for the benefit of the grantor." Since the record does not show whether the scholarships Justyn received were outright grants or were

---

[18]Under section 1.151-3(b), Income Tax Regs., "the term 'student' means an individual who during each of 5 calendar months during the calendar year in which the taxable year of the taxpayer begins is a full-time student at an educational institution".

[19]Section 170(b)(1)(A)(ii) refers to "an educational organization which maintains a regular faculty and curriculum and normally has a regularly enrolled body of pupils or students in attendance at the place where its educational activities are regularly carried on".

compensatory, section 152(f)(5) is inapplicable to Justyn, and her scholarships must be included in her "support".

The support test requires the taxpayer to establish the total support costs for the claimed individual and that the taxpayer provided at least half of that amount:

> For purposes of determining whether or not an individual received, for a given calendar year, over half of his support from the taxpayer, there shall be taken into account the amount of support received from the taxpayer as compared to the entire amount of support which the individual received from all sources, including support which the individual himself supplied. * * *

Sec. 1.152-1(a)(2)(i), Income Tax Regs.; see also Archer v. Commissioner, 73 T.C. 963, 967 (1980). Thus, a taxpayer who cannot establish the total amount of support costs for the claimed individual generally may not claim that individual as a dependent. Blanco v. Commissioner, 56 T.C. 512, 514-515 (1971); Cotton v. Commissioner, T.C. Memo. 2000-333. The amount of total support provided by the taxpayer may be reasonably inferred from competent evidence. See Stafford v. Commissioner, 46 T.C. 515, 518 (1966).

In 2000 Justyn left home to attend college at Murray State University, and during the tax years at issue she lived with the Adlers only in the summers of 2001, 2002, and 2004. While at college, Justyn participated in a work study program and received various grants and scholarships. However, the Adlers alleged that they paid for Justyn's college tuition, textbooks, room and

board, and clothes. The Adlers also alleged that they bought Justyn a car at some point during the tax years at issue and paid for her car insurance and gas.

On February 5, 2002 (i.e., near the beginning of the second of the four years at issue), Justyn married Cesar, who was a student at the Rose-Hulman Institute of Technology in Terre Haute, Indiana. While at college, Cesar participated in a work study program, received various grants and scholarships, took out student loans, and received money from his father. In addition, the Adlers paid for Cesar's car insurance after he married Justyn. However, the Adlers alleged that they also bought Cesar a car in 2002, paid some of his bills at Rose-Hulman, and bought him groceries.

The Adlers contend that some of the above expenses were paid via their credit card, which they lent to Justyn to support both her and Cesar. In support of their contention, the Adlers submitted several credit card bills (some of which are addressed to Mr. Adler, and some to Justyn) for the tax years at issue, which show charges in both Murray, Kentucky, and Terre Haute, Indiana--the locations in which Justyn and Cesar attended college. However, the Adlers did not submit into evidence copies of checks or other evidence to show that they--not Justyn or Cesar--paid those credit card bills. In addition, neither Justyn nor Cesar testified with respect to any issue, including the

credit card bills.  In the absence of such testimony, we infer that it would have been unfavorable to Mr. Adler.  See <u>Wichita Terminal Elevator Co. v. Commissioner</u>, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947).

We find it plausible that the Adlers would lend their daughter a credit card and otherwise support her through college.  In addition, it is conceivable that they would support their daughter's husband.  However, the record is vague and incomplete with respect to the actual amounts provided by the Adlers for the support of Justyn and Cesar.[20]

The Adlers did not keep records of how much they spent on Justyn or Cesar.  In fact, the Adlers never even alleged the dollar amounts of support that Justyn received from them or in total.  With respect to Cesar, Mr. Adler alleged that he provided 14.2 percent and 51.1 percent of Cesar's support in 2002 and 2004, respectively.[21]  However, Mr. Adler did not support these figures with credible testimony or other evidence.  In addition,

---

[20]It should be noted that Mr. Adler does not contend that any records relating to the support of his daughter and son-in-law were destroyed in the alleged flood.

[21]Mr. Adler alleges that he may claim Cesar as a dependent in 2002--despite the fact that he provided less than half of Cesar's total support--under the so-called multiple support agreement rule under section 152(c).  However, Mr. Adler has not alleged, nor does the record show, that he satisfied section 152(c)(4), which requires the other potential claimants to file written declarations with the IRS that they will not claim Cesar as a dependent.  Mr. Adler does not allege the percentage of Cesar's support that he provided in 2003.

both Justyn and Cesar had other sources of support, such as work study programs and scholarships, that Mr. Adler failed to quantify. Thus, we cannot find that Mr. Adler has established the total amounts of support for Justyn or Cesar in the tax years at issue.

We are convinced that the Adlers paid some expenses on behalf of Justyn, and it is plausible that they paid some expenses on behalf of Cesar. However, Mr. Adler failed to provide the Court with any significant corroborative evidence establishing the total amount of support or his portion of such support for either Justyn or Cesar during any of the tax years at issue. Accordingly, we hold that Mr. Adler is not entitled to dependency exemption deductions under sections 151(c) and 152(a) for Justyn for the 2003 and 2004 tax years or for Cesar for the 2002 through 2004 tax years.

B. Education Credit

Section 25A allows education credits[22] against tax for "qualified tuition and related expenses" paid by the taxpayer during the tax year. Section 25A(f)(1)(A)(iii) defines the term "qualified tuition and related expenses", in pertinent part, to include "tuition and fees" for "any dependent of the taxpayer

---

[22]These credits are called the Hope Scholarship Credit and the Lifetime Learning Credit. Both are subject to multiple conditions and limitations that need not be discussed in this opinion.

with respect to whom the taxpayer is allowed a deduction under section 151". Mr. Adler claimed education credits for Justyn for the 2001 through 2004 tax years and for Cesar for the 2002 through 2004 tax years. Respondent contends the education credits must be disallowed for Justyn for the 2003 and 2004 tax years, and for Cesar for the 2002 through 2004 tax years. To prevail on this issue, Mr. Adler must show that: (i) he is entitled to dependency exemption deductions under section 151 for Justyn for the 2003 and 2004 tax years and for Cesar for the 2002 through 2004 tax years; and (ii) he paid "qualified tuition and related expenses" for Justyn and Cesar for those years. See sec. 25A(b), (c), (f).

We concluded above that Mr. Adler is not entitled to a dependency exemption deduction under section 151 for Justyn or Cesar for any of the tax years at issue. Accordingly, Mr. Adler is not entitled to an education credit for Justyn and Cesar for those years. In addition, Mr. Adler has failed to substantiate that he paid any "qualified tuition and related expenses" for Justyn or Cesar during the tax years at issue. For that reason, as well, Mr. Adler is not entitled to education credits greater than respondent has conceded. Accordingly, we hold that Mr. Adler is not entitled to education credits under section 25A for Justyn for the 2003 and 2004 tax years or for Cesar for the 2002 through 2004 tax years.

## V.   Joint Filing Status

In order to qualify to calculate tax under rates applicable to "Married Individuals Filing Joint Returns", an individual must make a joint return with his or her spouse pursuant to section 6013.  Sec. 1(a)(1).  At the time the IRS prepared the substitutes for returns and the notices of deficiency, Mr. Adler had not yet elected "married filing jointly" status by filing a joint return.  However, in his petitions he alleged that the IRS "used the incorrect filing status"; and he subsequently did submit to the IRS copies of joint Forms 1040, which the IRS accepted as late returns and which are in the record.  Cf. Phillips v. Commissioner, 86 T.C. 433, 441 n.7 (1986) ("where the taxpayer has filed no return as of the date the case is submitted for decision * * * no returns would be in the record, and, therefore, no joint filing status could be claimed"), affd. in relevant part 851 F.2d 1492 (D.C. Cir. 1988).  Mr. Adler is therefore entitled to calculate his tax under section 1(a)(1).

## VI.  Additions to Tax

### A.   Section 6651(a)(1)

Section 6651(a)(1) authorizes the imposition of an addition to tax for failure to file a timely return unless the taxpayer proves that such failure is due to reasonable cause and is not due to willful neglect.  See also United States v. Boyle, 469 U.S. 241, 245 (1985); Harris v. Commissioner, T.C. Memo.

1998-332.  Respondent introduced evidence showing that Mr. Adler failed to timely file his Forms 1040 for the 2001 through 2004 tax years.  The Forms 4340, Certificate of Assessments, Payments, and Other Specified Matters, submitted into evidence by both parties--in tandem with the credible testimony of respondent's expert witness--indicate that Mr. Adler failed to timely file his Forms 1040 for the tax years at issue.  This evidence is sufficient to satisfy respondent's burden of production under section 7491(c), and we so find.  See Cobaugh v. Commissioner, T.C. Memo. 2008-199.

However, to support his contrary contention,[23] Mr. Adler relies on the return he submitted to the IRS Office of Appeals on March 17, 2008, which he claims was a copy of his timely filed joint Form 1040 for 2001, and returns he submitted on March 31, 2008, that he claims were reconstructions of timely filed joint Forms 1040 for the 2002 through 2004 tax years.  Mr. Adler also produced at trial yet another purported copy of his timely filed 2001 Form 1040.  However, the 2001 Form 1040 he submitted at trial differed significantly from the 2001 Form 1040 he submitted to the Office of Appeals.  The handwritten signatures and dates

---

[23]Mr. Adler could avoid liability for the addition to tax if he could show that he had reasonable cause for his failure to file his Forms 1040 for the 2001 through 2004 tax years.  See sec. 6651(a)(1); Rule 142(a)(1).  However, Mr. Adler contended only that he did file the returns and offered no testimony or other evidence that his failure to file was due to reasonable cause.

on the purportedly identical copies are materially different.  In addition, the fonts in which the numerals are typed on the second pages of the Forms 1040 are visibly different.

Mr. Adler posits that the IRS's records fail to show the timely filing of his returns because the IRS lost his returns.  The IRS, staffed as it is by fallible human beings, is certainly capable of losing a tax return.  However, there is no reason to suppose that in this instance the IRS lost the return of the same taxpayer four years in a row.  Mr. Adler's story as to 2001 is self-contradictory, since he has two different copies of the return he allegedly filed for 2001.  It appears as likely as not that the purported copies are backdated forgeries--a conclusion that undercuts not only Mr. Adler's specific contention about the filing of the returns but also his overall credibility.  In addition, Mr. Adler fails to paint a convincing self-portrait of reliable compliance with the tax laws.  At trial Mr. Adler admitted that he had not yet filed an income tax return for 2006, 2007, or 2008, and respondent offered records showing that, in the 20 years from 1988 to 2007, only twice did Mr. Adler timely file his Form 1040.  In 18 of the years, he filed late or not at all.[24]

---

[24]Mr. Adler interprets the IRS records offered into evidence to show that he received eight tax refunds in the 20 years from 1988 to 2007, and he argues that this fact shows that he was not a chronically delinquent filer during that period.  It appears

(continued...)

Accordingly, we find that Mr. Adler did not timely file his tax returns for 2001 to 2004, and we hold that Mr. Adler is liable for the addition to tax under section 6651(a)(1) for those years.

B.   Section 6651(a)(2)

Section 6651(a)(2) imposes an addition to tax for failure to pay the amount of tax shown on a return.  The addition to tax under section 6651(a)(2) applies only when an amount of tax is shown on a return.  Cabirac v. Commissioner, 120 T.C. 163, 170 (2003).  The Commissioner's burden of production with respect to the section 6651(a)(2) addition to tax requires him to introduce evidence that a return showing the taxpayer's tax liability was filed for the year in question.  Wheeler v. Commissioner, 127 T.C. 200, 210 (2006), affd. 521 F.3d 1289 (10th Cir. 2008).

In a case such as these where the taxpayer did not timely file returns for the tax years at issue,[25] the Commissioner must

---

[24](...continued)
that Mr. Adler misinterprets the IRS records in several instances, but it is true that for some years he received overpayments.  While Mr. Adler is right that the IRS is unlikely to approve a refund to someone who altogether fails to file a tax return, the IRS certainly may allow a refund claimed in a tax return that is filed late.  In fact, the Forms 4340 which Mr. Adler cites to demonstrate that he received tax refunds show that he repeatedly failed to timely file his tax returns, including most of those that yielded overpayments of tax.

[25]Mr. Adler's late-filed returns for 2001, 2003, and 2004 do not provide a basis for respondent to assert the addition to tax under section 6651(a)(2), because each of those returns shows an
(continued...)

introduce evidence that a valid substitute for return was made pursuant to section 6020(b).  Sec. 6651(g)(2).  To constitute a valid substitute for return under section 6020(b), "the return must be subscribed, it must contain sufficient information from which to compute the taxpayer's tax liability, and the return form and any attachments must purport to be a 'return'." Spurlock v. Commissioner, T.C. Memo. 2003-124.

The substitutes for returns that the parties jointly submitted into evidence were not subscribed as required by section 6020(b)(2).  As a result, the substitutes for returns do not satisfy section 6020(b), and respondent has failed to satisfy his burden of production under section 7491(c) with respect to the section 6651(a)(2) addition to tax.  Accordingly, we hold that Mr. Adler is <u>not</u> liable for the addition to tax under section 6651(a)(2) for the 2001 through 2004 tax years.

---

[25](...continued)
overpayment rather than a liability.  Mr. Adler's late-filed return for 2002 does show a small liability (i.e., $132.25), which might provide the basis for a small addition to tax.  See Wolcott v. Commissioner, T.C. Memo. 2007-315 n.6 (distinguishing Mendes v. Commissioner, 121 T.C. 308, 324-325 (2003)), affd. without published opinion 2009-1 USTC par. 50,300 (6th Cir. 2008).  However, neither at trial nor on brief did respondent argue that Mr. Adler's 2002 late-filed return provides a basis for the addition to tax, so we do not sustain the addition on that basis.

C.   Section 6654

Section 6654 imposes an addition to tax on an individual taxpayer who underpays his estimated tax.  A taxpayer has an obligation to pay estimated tax for a particular year if he has a "required annual payment" for that year.  Sec. 6654(d).  A "required annual payment" is defined in section 6654(d)(1)(B) as:

> the lesser of--
>
> > (i)  90 percent of the tax shown on the return for the taxable year (or, if no return is filed, 90 percent of the tax for such year), or
> >
> > (ii) 100 percent of the tax shown on the return of the individual for the preceding taxable year.
>
> Clause (ii) shall not apply if * * * the individual did not file a return for such preceding taxable year.

Thus, respondent's burden of production under section 7491(c) requires him to produce, for each year for which the addition is asserted, evidence that the taxpayer had a required annual payment under section 6654(d); and in order to do so he must demonstrate the tax shown on the taxpayer's return for the preceding year, unless he can show that the taxpayer did not file a return for that preceding year.  Wheeler v. Commissioner, supra at 210-212.

With respect to the 2001 tax year, respondent submitted a Form 4340 into evidence to demonstrate the tax shown on

Mr. Adler's return for the 2000 tax year.[26]  With respect to the 2002 through 2004 tax years, we have already found that Mr. Adler did not file returns for the preceding years (2001 through 2003). Respondent has thus carried his burden of production under section 7491(c) with respect to the section 6654 addition for the 2001 through 2004 tax years.

The section 6654 addition to tax is mandatory unless the taxpayer can place himself within one of the computational exceptions provided for in subsection (e) thereof.  Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980).  Mr. Adler has not shown that any of the computational exceptions to section 6654 applies.  Accordingly, we hold that Mr. Adler is liable for the addition to tax under section 6654 for the 2001 through 2004 tax years.

To reflect the foregoing,

Decisions will be entered

under Rule 155.

_____

[26]The 2000 tax year is the "preceding taxable year" with respect to the 2001 tax year for purposes of section 6654(d)(1)(B)(ii).  The Form 4340 for 2000 shows that Mr. Adler reported a tax liability of $24 on his 2000 Form 1040, which the IRS assessed on June 4, 2001.  Since Mr. Adler reported a positive tax liability on his 2000 Form 1040, the exception under section 6654(e)(2) to the requirement to pay estimated taxes is inapplicable.  Jones v. Commissioner, T.C. Memo. 2006-176 (for purposes of section 6654(e)(2), we look to the tax liability shown on the return for the previous year, rather than the tax liability ultimately assessed by the Commissioner); see also Mendes v. Commissioner, 121 T.C. 308, 324 (2003).