T.C. Memo. 1999-11


UNITED STATES TAX COURT


WILLIAM BARRY BLYTHE AND CHERYL LYNN BLYTHE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 13949-97.                    Filed January 22, 1999.


William Barry and Cheryl Lynn Blythe, pro sese.

<u>Karen Nicholson Sommers</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


CHIECHI, <u>Judge</u>:  Respondent determined a deficiency in petitioners' Federal income tax (tax) and an accuracy-related penalty under section 6662(a)[1] for taxable year 1994 in the amounts of $15,404 and $3,081, respectively.

The issues remaining for decision are:

_____

[1]  All section references are to the Internal Revenue Code (Code) in effect for the year at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

(1) Are petitioners liable for 1994 for self-employment tax? We hold that they are not.

(2) Are petitioners entitled for 1994 to the deductions that they are claiming? We hold that they are not.

(3) Are petitioners liable for 1994 for the accuracy-related penalty under section 6662(a)? We hold that they are to the extent stated herein.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioners resided in Murrieta, California, at the time the petition was filed.

At various times during the last four months of 1993 and the first six months of 1994, petitioner William Barry Blythe (Mr. Blythe) acquired title to ten parcels of residential real property (parcels), each of which was subject to an outstanding mortgage loan at the time he acquired title. He acquired such title without having paid any cash or having assumed any such loan. With respect to six of the ten parcels, Mr. Blythe acquired title within one-to-several months after a notice of default had been recorded on each such parcel by the holder of the outstanding mortgage loan thereon (lender). With respect to the remaining four parcels, the lender recorded a notice of default on each such parcel within two-to-several months after Mr. Blythe acquired title to each parcel.

Mr. Blythe held title (1) to three of the ten parcels until the lenders foreclosed on them during 1994 and (2) to the remain-

ing seven parcels until the lenders foreclosed on them during 1995.  Mr. Blythe acquired and held title to the ten parcels in question for the purpose of producing rental income from such parcels.  He did not acquire and hold title to those parcels for the purpose of selling them with a view to the gains and profits that might be derived from such sales.

Throughout the various periods during which Mr. Blythe held title to the ten parcels, the respective occupants of those parcels made rental payments to petitioners.  Throughout those periods, petitioners did not pay any property taxes or make any mortgage loan payments with respect to any of those parcels.  Nor did Mr. Blythe offer or advertise any of them for sale.

In Schedule C of their return for 1994 (1994 Schedule C), petitioners reported the rental payments that they received during that year from the ten parcels in question as gross receipts from a business which they described as "Property Mgmt".  Petitioners reported no other gross receipts or income in their 1994 return.  Petitioners claimed in their 1994 Schedule C total expenses of $54,372.[2]  Those expenses did not include any claimed depreciation.  Petitioners reported in their 1994 Schedule C a net profit of $5,229.  Each of them reported in a separate Schedule SE, Self-Employment Tax, of their 1994 return (1994 Schedule SE) about one-half (viz. $2,615) of that claimed 1994 Schedule C net profit and "Net earnings from self-employment" of

---

[2]  In fact, the various expenses that petitioners claimed in their 1994 Schedule C total $54,880, not $54,372.

$2,414. Petitioners did not report any gain or loss with respect to the foreclosures on the ten parcels in their 1994 and 1995 tax returns.

On January 11, 1994, Franz Huber and Nancy Huber (the Hubers) and petitioners entered into a "Lease with Option to Purchase" (lease). Pursuant to the lease, throughout the term of the lease which began on March 1, 1994, and ended on February 28, 1997, the Hubers agreed to lease to petitioners, and petitioners agreed to pay the Hubers monthly rent of $2,200 for, certain real property located in Temecula, California, which petitioners used as their personal residence (personal residence). The Hubers also granted to petitioners in the lease the option to purchase for $389,000 the personal residence, which petitioners could exercise at any time during the period March 1, 1994, through February 28, 1997, by giving 60 days' written notice to the Hubers. Petitioners did not claim any mortgage loan interest deductions with respect to the personal residence in their 1994 return.

In the notice of deficiency (notice) issued to petitioners for 1994, respondent disallowed the expenses that they claimed in their 1994 Schedule C because they did not establish that those expenses were paid or incurred during 1994 and/or that they were ordinary and necessary expenses within the meaning of section 162(a). Respondent further determined in the notice that the net profit that petitioners reported in their 1994 Schedule C should be increased by the amount of those disallowed expenses and that,

because of that increase in net profit, the self-employment tax due from each petitioner should be increased from that reported in the 1994 Schedules SE. Respondent also determined in the notice that petitioners are liable for 1994 for the accuracy-related penalty under section 6662(a) because of negligence or disregard of rules or regulations under section 6662(b)(1).

OPINION

Petitioners bear the burden of proving that the determinations in the notice are erroneous and that their position regarding the new issues that they raised in the petition and at trial should be sustained. Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).

<u>Self-Employment Tax</u>

Petitioners reported in their 1994 Schedule C the rental payments that they received and the expenses that they claimed from the activity in which they engaged during 1994 involving the ten parcels in question and which they described in that schedule as a property management business. Petitioners now contend that they should have reported those payments and those expenses for 1994 in Schedule E, Supplemental Income and Loss (Schedule E), and not in their 1994 Schedule C, because they were not engaged during 1994 in a trade or business involving the ten parcels as real estate dealers. According to petitioners, they had no net profit from a business as real estate dealers, and therefore had no net earnings from self-employment, for 1994. They maintain that, therefore, they are not liable for self-employment tax for

that year.  Respondent disagrees.  According to respondent, petitioners were engaged during 1994 in a business as real estate dealers with respect to the ten parcels in question and received the rental payments from those parcels in the course of that business.  Respondent maintains that, therefore, those payments are required to be included in calculating petitioners' net earnings from self-employment and self-employment tax for 1994.

Section 1401 imposes a tax on an individual's "self-employment income".  As applicable here, the term "self-employment income" means the net earnings from self-employment derived by an individual during any taxable year, sec. 1402(b), and the term "net earnings from self-employment" means

> the gross income derived by an individual from any
> trade or business carried on by such individual, less
> the deductions allowed by this subtitle which are
> attributable to such trade or business * * * except
> that in computing such gross income and deductions
> * * * --
>
> > (1) there shall be excluded rentals
> > from real estate * * * together with the
> > deductions attributable thereto, unless
> > such rentals are received in the course
> > of a trade or business as a real estate
> > dealer * * *  [Sec. 1402(a)(1).]

Section 1.1402(a)-4(a), Income Tax Regs., elaborates on the foregoing exception from the definition of the term "net earnings from self-employment", as follows:

> (a) In general.  Rentals from real estate * * * and the
> deductions attributable thereto, unless such rentals
> are received by an individual in the course of a trade
> or business as a real-estate dealer, are excluded.
> Whether or not an individual is engaged in the trade or
> business of a real-estate dealer is determined by the
> application of the principles followed in respect of

the taxes imposed by sections 1 and 3. In general, an individual who is engaged in the business of selling real estate to customers with a view to the gains and profits that may be derived from such sales is a real-estate dealer. On the other hand, an individual who merely holds real estate for investment or speculation and receives rentals therefrom is not considered a real-estate dealer.

Based on our examination of the entire record before us, we find that Mr. Blythe acquired and held title to the ten parcels in question for the purpose of producing rental income from such parcels. That is exactly what he did, and it is that rental income which petitioners reported in their 1994 Schedule C. We also find on that record that Mr. Blythe did not acquire and did not hold title to the ten parcels in question for the purpose of selling them to customers with a view to the gains and profits that might be derived from such sales. Petitioners did not offer or advertise any of the parcels for sale during 1994 or at any other time. The lenders who foreclosed upon the ten parcels during 1994 and 1995 were not customers of petitioners.

On the instant record, we find that petitioners were not engaged in a business as real estate dealers during 1994, that the rental payments which they received during that year were not received by them in the course of such a business, and that such rental payments are not includible in the computation of net earnings from self-employment under section 1402. Sec.

1402(a)(1).  Accordingly, we hold that petitioners are not liable for self-employment tax for 1994.[3]

Claimed Deductions

Claimed Deductions Relating to the Ten Parcels

Petitioners claimed in their 1994 Schedule C various expenses with respect to the activity in which they engaged involving the ten parcels.  They did not, however, claim any depreciation with respect to those parcels.  In the notice, respondent disallowed the expenses that petitioners claimed in their 1994 Schedule C because they did not establish that those expenses were paid or incurred during 1994 and/or that they were ordinary and necessary expenses within the meaning of section 162(a).

Petitioners contend that they are entitled to all of the expenses that they claimed in their 1994 Schedule C except for certain expenses which they have conceded.  In addition, they now claim that they are entitled to depreciation for each of the ten parcels in question.  Respondent disagrees.

Deductions are strictly a matter of legislative grace, and petitioners bear the burden of proving that they are entitled to any deductions claimed.  INDOPCO, Inc. v. Commissioner, 503 U.S.

---

[3] In order to resolve the self-employment tax issue presented, we need not decide whether petitioners correctly included the rental payments from the ten parcels in question in their 1994 Schedule C or whether they should have included those payments in Schedule E for that year.  That is because, regardless whether petitioners were engaged in an activity during 1994 involving the ten parcels in question that constituted a trade or business, we have found that petitioners were not engaged during that year in a trade or business as real estate dealers.

79, 84 (1992). Petitioners attempted to satisfy that burden through Mr. Blythe's testimony as well as certain limited documentary evidence which related only to the vehicle expense and depreciation deductions that they are seeking. We found Mr. Blythe's testimony about the deductions at issue to be general, conclusory, vague, and/or questionable. We found the limited documentary evidence to suffer from inadequacies that are similar to those that we found in Mr. Blythe's testimony. Suffice it to say that we consider the document which petitioners claim is a log of the miles that they drove during 1994 in their activity involving the ten parcels in question and which is the foundation for petitioners' claim to the vehicle expense deductions at issue to be suspect. The one-page document in the record relating to the depreciation deductions claimed with respect to seven of the ten parcels merely sets forth petitioners' position as to, inter alia, the date on which each such parcel was placed in service, the basis that petitioners claim they had in each such parcel for purposes of computing a depreciation deduction for 1994, and the amount of depreciation to which they contend they are entitled for each of those seven parcels. However, there is no evidence in the record establishing the correctness of petitioners' position as to each of those matters. For example, petitioners have not established that they had a basis in any of the parcels in question on which a depreciation deduction could be calculated, let alone how any such basis should be allocated between nondepreciable land and depreciable buildings.

Evidently realizing that they have serious evidentiary problems regarding their position on the deductions that they are claiming with respect to the ten parcels, petitioners assert: "It is unreasonable to expect to manage and maintain 10 properties for 12 months * * * without incurring any expenses. Reasonable expenses should be allowed." In support of that position, petitioners cite Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). On the record before us, we disagree with petitioners' position that "Reasonable expenses should be allowed" in the present case. The so-called Cohan rule permits us to estimate and allow expenses that have not been adequately substantiated only if we are convinced from the record that such expenses were incurred by the taxpayer and that they otherwise satisfy the requirements of the Code as to their deductibility, and we have a basis on which to make an estimate of such expenses. The circumstances under which the so-called Cohan rule is to be applied are not present in the instant case.

Based on our examination of the entire record in this case, we find that petitioners have failed to establish that they are entitled (1) under either section 162 or section 212 to the expense deductions[4] or (2) under section 167 to the depreciation deductions that they are claiming for 1994 with respect to the ten parcels in question.

---

[4] We need not decide whether the claimed expense deductions are subject to sec. 162 or sec. 212 because petitioners have failed to show that they have met the requirements of either section.

Claimed Mortgage Loan Interest Deductions
Relating to the Personal Residence

Although petitioners did not claim any mortgage loan interest deductions with respect to the personal residence in their 1994 return, they contend here that they are entitled to such deductions.  That is because, according to petitioners, petitioners purchased, and did not lease, the personal residence, and the payments that they made during the first nine months of 1994 to the Hubers were mortgage loan payments consisting entirely of interest.  Respondent counters that petitioners were leasing the personal residence during 1994 and that the payments which they made to the Hubers during that year constitute rental income.  On the record before us, we agree with respondent.  We find the agreement entitled "Lease with Option to Purchase" into which the Hubers as lessors and petitioners as lessees entered to be an agreement under which the Hubers agreed to lease to petitioners, and petitioners agreed to pay the Hubers monthly rent of $2,200 for, the personal residence.  Although that agreement also granted petitioners the option to purchase the leased personal residence, there is no reliable evidence in the record establishing that petitioners exercised that option.

Based on our examination of the entire record in this case, we find that petitioners have failed to show that they are entitled to the mortgage loan interest deductions that they are claiming for 1994 with respect to the personal residence.

Accuracy-Related Penalty

Respondent determined that petitioners are liable for 1994 for the accuracy-related penalty under section 6662(a) because their underpayment of tax for that year was due to negligence or disregard of rules or regulations under section 6662(b)(1). For purposes of section 6662(a), the term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Code. Sec. 6662(c). Negligence also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly. Sec. 1.6662-3(b), Income Tax Regs. The term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c).

The accuracy-related penalty under section 6662(a) does not apply to any portion of an underpayment if it is shown that there was reasonable cause for such portion and that the taxpayer acted in good faith. Sec. 6664(c)(1). The determination of whether the taxpayer acted with reasonable cause and in good faith depends upon the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's efforts to assess his or her proper tax liability. Id.

In support of petitioners' position that they are not liable for 1994 for the accuracy-related penalty, Mr. Blythe testified that he "did the best that * * * [he] could" in preparing petitioners' 1994 return. On the record before us, we find that petitioners failed to show that they acted with reasonable cause

and in good faith in claiming deductions for the expenses listed in their 1994 Schedule C.  Consequently, we sustain respondent's determination imposing the accuracy-related penalty under section 6662(a) for 1994 to the extent that those claimed deductions resulted in an underpayment of tax required to be shown in petitioners' return for that year.

To reflect the foregoing and the concessions of petitioners,

Decision will be entered under Rule 155.