T.C. Memo 2016-168

UNITED STATES TAX COURT

JOHN R. GALBRAITH AND MARY M. GALBRAITH, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1673-13.                    Filed September 12, 2016.

John R. Galbraith and Mary M. Galbraith, pro se.

<u>Brenn C. Bouwhuis</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HOLMES, <u>Judge</u>:  This is a substantiation case arising from John
Galbraith's Schedule C.  He claimed numerous deductions for his work as a
traveling salesman, but his recordkeeping was spotty.  The Commissioner

**[*2]** determined a deficiency in tax of more than $20,000 and seeks an additional $5,000 in penalties.

## FINDINGS OF FACT

During 2009 Galbraith was a traveling salesman selling maintenance parts like nuts, bolts, power tools, and certain electrical items. He used to work for a single company, but in 2009 he began to split his time between a distributor--Winzer--which sent him a Form W-2 that he reported as wages on his return; and his own business, whose receipts and expenses he reported on a Schedule C. Whether he was on his own time or on the distributor's time, Galbraith's job was the same. He would make cold calls on potential clients, visit those who would receive him, and try to close sales.

Many of the products that Galbraith sold were difficult to find, so he had a niche market. His Schedule C sales were very specialized, and he had only one customer in that business in the year before us, a Spanish windmill manufacturer that needed a very particular kind of bolt that Galbraith knew how to procure.

Even though Galbraith had only one non-Winzer customer that year, he claimed a great deal of mileage for what he said were cold calls for his Schedule C business. This raises an obvious question: How is it that an experienced salesman gave such frequent and voluminous sales pitches yet gets only one customer? It

[*3] seems more likely that Galbraith's mileage was related to his work on commission for Winzer rather than his Schedule C business. This hurts his credibility, and it isn't the only thing that does.

The most serious problem came from discrepancies in his mileage logs. He operated four vehicles during the 2009 tax year: a truck, a 1999 Jeep, a 2002 Acura, and a 2007 Acura. Galbraith claimed at trial that he recorded his daily mileage by writing the starting and ending odometer readings for each trip on a Post-it note. After he recorded the number, he would stick the Post-it note in his Day-Timer. But the mileage log for the 1999 Jeep stated that its odometer read 118,905 miles on January 1, 2009, while a Carfax report on the same vehicle showed an odometer reading of 126,121 in November 2007. Galbraith said that after he had the Jeep's dashboard replaced there was a "new starting mileage" on the Jeep. But we also spotted a similar problem in the logs for Galbraith's 2002 Acura: In November 2008 the Acura had an odometer reading of 109,422, but by January 1, 2009, it had run backward to 103,723. This time, Galbraith admitted that he couldn't account for the discrepancy. We do not find Galbraith's testimony about these logs convincing.

Galbraith also failed to report income from various sources and claimed numerous other deductions on his 2009 tax return. In October 2012 the

[*4] Commissioner sent him a notice of deficiency. Galbraith, a California resident, timely filed his petition. After a slew of concessions, only his Schedule C expenses and the section 6662(a)[1] penalty remain at issue. Those expenses are:

| Expense | Amount claimed | Amount allowed | Amount disallowed |
|---|---|---|---|
| Car & truck | $37,152 | $750 | $36,402 |
| Depreciation | 5,522 | --- | 5,522 |
| Insurance (non-health) | 2,133 | --- | 2,133 |
| Office | 3,066 | --- | 3,066 |
| Repairs & maintenance | 3,281 | --- | 3,281 |
| Travel | 2,177 | --- | 2,177 |
| Meals & entertainment | 342 | --- | 342 |
| Utilities | 6,660 | 600 | 6,060 |
| Other | 4,782 | 600 | 4,182 |
| Non-transcribed | 31,408 | --- | 31,408 |
| Total | 96,523 | 1,950 | 94,573 |

---

[1] All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule reference are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

**[*5]**                                    OPINION

Section 162 allows a deduction for ordinary and necessary expenses paid or incurred in connection with a trade or business. We generally presume the Commissioner's determination in the notice of deficiency is correct, and the taxpayer has the burden of proving what he spent. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). To prove these deductions, a taxpayer usually must keep sufficient records to substantiate them. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs. We may estimate some types of business expenses, but only if the taxpayer provides at least some evidence to support an estimate and only if we are convinced from the record that he incurred them. Cohan v. Commissioner, 39 F.2d 540, 543-44 (2d Cir. 1930); Blythe v. Commissioner, T.C. Memo. 1999-11.

Some expenses have enhanced substantiation requirements under section 274. These include expenses for travel and meals and entertainment. Id. For these expenses, a taxpayer must show the amount, the time, the place, and the business purpose of each expense. Sec. 1.274-5T(b), (c)(1), Temporary Income Tax Regs. A taxpayer usually presents some sort of account book, diary, or log made near the time of the expense, but in their absence, a taxpayer's testimony along with corroborative evidence may suffice. Id. para. (c)(2) and (3).

**[\*6]** Galbraith claimed $96,000 in Schedule C expenses and the Commissioner

allowed only about $2,000. We will group these expenses by category.

I.      Section 274 Expenses

A.      Car and Truck

| Expense | Amount claimed | Amount allowed | Amount disallowed |
|---|---|---|---|
| Car & truck | $37,152 | $750 | $36,402 |

Galbraith claimed $37,152 in car-and-truck expenses for the 2009 tax year--

opting to use the standard mileage rate. He provided pages of purported mileage

logs for the four vehicles he operated, but the discrepancies with the odometer

readings make them not credible. Another problem with the logs is that Galbraith

admitted twice during trial that he was out of town or doing work in his capacity

as Winzer's employee on a day that he logged miles for his Schedule C business.

See Barton v. Commissioner, T.C. Memo. 2005-97 (finding numerous

inconsistencies in the evidence submitted by the taxpayer to substantiate his

automobile expenses and not allowing additional expenses). Even if we could

trust Galbraith's logs, they do not identify the business purpose of each expense,

and so still wouldn't meet section 274's requirements. See sec. 1.274-5T(b),

(c)(1), Temporary Income Tax Regs. We therefore find that he is not entitled to a

larger deduction for his car-and-truck expenses beyond the small amount the

[*7] Commissioner already allowed.  See Meridian Wood Prods. Co. Inc., v. United States, 725 F.2d 1183, 1190 (9th Cir. 1984); Pace v. Commissioner, T.C. Memo. 2010-272; Royster v. Commissioner, T.C. Memo. 2010-16.

B.     Travel, meals, and entertainment

| Expense | Amount claimed | Amount allowed | Amount disallowed |
| --- | --- | --- | --- |
| Travel | $2,177 | --- | $2,177 |
| Meals & entertainment | 342 | --- | 342 |

Galbraith claimed just over $2,177 in travel expenses and another $342 for his meals and entertainment.  To substantiate these expenses, Galbraith submitted various credit-card statements and receipts for airfare, hotels, and meals.  There is no way to tell from these documents, however, what the business purpose of each expense was--or if there even was one at all.  Therefore, we find for the Commissioner on these expenses.

C.     Cell phones

| Expense | Amount claimed | Amount allowed | Amount disallowed |
| --- | --- | --- | --- |
| Cellular phone | $2,887 | $361 | $2,526 |

Galbraith claimed $2,887 in expenses for his cellular phones.  The Commissioner did allow $361, so we are only deciding whether Galbraith is

**[*8]** entitled to any deduction beyond that. To substantiate these expenses he submitted 2009 bills from Verizon Wireless.

In 2009 cellular phones were listed property and thus subject to strict substantiation requirements under section 274.[2] Secs. 280F(d)(4)(A)(v), 274(d). Each Verizon Wireless statement shows a cell phone plan for four numbers: The first number was for a phone Galbraith used substantially, but not exclusively, for business; the second was for a phone he used not at all; the third was for his son's phone and used for an unrelated business; and the fourth was for his wife's personal phone. And Galbraith used his business phone not just for his own business, but for his Winzer work. The Commissioner determined that only one-half of one-fourth of Galbraith's cellphone expenses should be deductible. We do not find that Galbraith showed that he was entitled to any more.

## II. Non-Section 274 Expenses

### A. Depreciation

| Expense | Amount claimed | Amount allowed | Amount disallowed |
|---|---|---|---|
| Depreciation | $5,522 | --- | $5,522 |

---

[2] Section 280F no longer includes cellular phones as listed property. Sec. 280F(d).

**[*9]**  Galbraith claimed $5,522 in depreciation expenses for the 2009 tax year. He did not submit *any* documents into evidence, nor did he offer any testimony during trial to substantiate his claim to depreciation expenses.  See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Adler v. Commissioner, T.C. Memo. 2010-47, aff'd, 443 F. App'x 736 (3d Cir. 2011).  His lack of documentation makes an estimation under Cohan impossible.  We therefore find for the Commissioner.

   B.   Insurance

| Expense | Amount claimed | Amount allowed | Amount disallowed |
| --- | --- | --- | --- |
| Insurance (non-health) | $2,133 | --- | $2,133 |

Galbraith claimed $2,133 in insurance expenses.  The only document he submitted as substantiation was something titled "Evidence of Insurance" for the 1999 Jeep and the 2007 Acura.  This document did not identify the cost of the insurance, or show that he had paid it (and it wasn't even for 2009).  Again, we cannot apply Cohan, and we find for the Commissioner.

**[*10]** C.     <u>Office Expenses</u>

| Expense | Amount claimed | Amount allowed | Amount disallowed |
|---|---|---|---|
| Office | $3,066 | --- | $3,066 |

Galbraith claimed $3,066 in office expenses. As he did for his meals-and-entertainment expenses, Galbraith submitted only credit-card statements and receipts as substantiation. This does not help us to figure out if the expenses were personal or served a business purpose. We find for the Commissioner on this issue.

D.     <u>Repairs and Maintenance</u>

| Expense | Amount Claimed | Amount Allowed | Amount Disallowed |
|---|---|---|---|
| Repairs & maintenance | $3,281 | --- | $3,281 |

Galbraith claimed $3,281 in expenses for repairs and maintenance. He didn't provide any documents--either contemporaneous or reconstructed--to substantiate these expenses. We were also unable to figure out what he was claiming had to be repaired or maintained. So again, Galbraith failed to substantiate his expenses. <u>See</u> <u>Fernandez v. Commissioner</u>, T.C. Memo. 2011-216 (taxpayer not entitled to deductions if unable to tie specific expenditures to business). We find for the Commissioner on this issue.

[*11] E.    Utilities

| Expense | Amount claimed | Amount allowed | Amount disallowed |
| --- | --- | --- | --- |
| Utilities (other than cellular phone) | $3,773 | $239 | $3,534 |

Galbraith claimed $3,773 in other utility expenses. The Commissioner did allow $239, so we are only deciding whether Galbraith is entitled to any deduction beyond that. To substantiate these expenses he submitted 2009 bills from PG&E and AT&T.

Galbraith submitted AT&T statements for landline phones for his wife and sister-in-law. Galbraith claimed that he sometimes used his sister-in-law's phone for his own business, but even if we found his testimony credible, there is no way to distinguish between charges for personal use and charges that had a business purpose. See Bennett v. Commissioner, T.C. Memo. 2010-114. It's the same story for the other two lines: Galbraith claims that these lines had a business purpose, but we do not find his testimony credible and he gave us no way to distinguish between business and personal charges. We therefore find that the primary purpose of these phone lines was personal. See Int'l Artists, Ltd. v. Commissioner, 55 T.C. 94, 105 (1970); see also Rowell v. Commissioner, T.C. Memo. 1988-410, aff'd, 884 F.2d 1085 (8th Cir. 1989).

[*12] Galbraith also claimed utility expenses for electricity and heat. He submitted PG&E statements for his personal residence. He also testified that he conducted business in only one room of the house and that even when he did it was mostly to fax documents. Galbraith testified that he used this room only as a home office, but we don't find him credible. There's also a subtler failure of proof here: A taxpayer is only entitled to claim utilities expenses for the portion of a personal residence that he uses *exclusively* for business purposes. Sec. 280A(c). Galbraith submitted no documents and gave no testimony about the size of the house and the room, which leaves us unable to do the math of proportional allocation even if we believed that he used the room exclusively for business. See Gaylord v. Commissioner, T.C. Memo. 2003-273 (no home-office deductions without proof of allocation of space in residence).

To recap, the Commissioner allowed $600 in utilities expenses. Galbraith is not entitled to anything more.

F.   Other Expenses

| Expense | Amount claimed | Amount allowed | Amount disallowed |
|---------|----------------|----------------|-------------------|
| Other   | $4,782         | $600           | $4,182            |

**[\*13]** Galbraith claimed $4,782 in other expenses. The Commissioner allowed $600, but there was no evidence of what these expenses even were, much less how they related to Galbraith's business. No more deductions here.

### G. Non-Transcribed Expenses

| Expense | Amount claimed | Amount allowed | Amount disallowed |
|---|---|---|---|
| Non-transcribed expenses | $31,408 | --- | $31,408 |

Galbraith claimed $31,408 in "non-transcribed" expenses. These expenses are a miscellaneous-expense category, and there was no evidence to support their deductibility. See Fernandez v. Commissioner, T.C. Memo. 2011-216 (no deductions without substantiation). Galbraith testified that even he didn't know what these expenses were for. No deductions here.

### H. Rent

Even though Galbraith did not claim rent as an expense on his 2009 Schedule C, he submitted a lease document relating to other years. He also submitted invoices for rent allegedly due in 2009, but no proof that he paid the rent. These documents don't prove that there was a lease or that rent was paid for the 2009 tax year, so Galbraith is not entitled to a deduction. See Edwards v. Commissioner, T.C. Memo. 2002-169, aff'd, 119 F. App'x 293 (D.C. Cir. 2005).

**[\*14]** To sum up, poor recordkeeping--and for some categories, no recordkeeping at all--means no deductions beyond what the Commissioner already allowed.

III.   Section 6662(a) Penalty

The Commissioner determined an accuracy-related penalty under section 6662(a), which imposes a penalty of 20 percent of the portion of the underpayment of tax attributable to any substantial understatement of tax.[3]  The initial burden of production is on the Commissioner to show that the understatement of tax was substantial.  Sec. 7491(c).  An understatement of tax is substantial if it exceeds the greater of $5,000 or "10 percent of the tax required to be shown on the return."  Sec. 6662(d)(1)(A).  Here, Galbraith's corrected tax liability for the 2009 tax year was over $21,000 and his reported tax liability was only $151.  The understatement is well over both 10 percent of the tax required to be shown *and* over $5,000.  The Commissioner has met his burden.

A taxpayer can rebut the penalty only by proving that he acted with reasonable cause and in good faith.  See sec. 6664(c)(1); sec. 1.6664-4(a), Income Tax Regs.  Galbraith offered no evidence on this issue, and the discrepancies in what records he did present make it difficult for us to believe he acted in good

---

[3]  The Code also imposes this penalty for negligence or disregard of rules or regulations, sec. 6662(b)(1), but because we find that there was a substantial understatement, we need not address Galbraith's negligence.

[*15] faith in claiming those deductions that the Commissioner disallowed.  We therefore find that Galbraith is liable for the section 6662(a) accuracy-related penalty.

<u>Decision will be entered for</u>

<u>respondent</u>.