T.C. Summary Opinion 2016-89


UNITED STATES TAX COURT


EDGAR DAVID BROWN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10473-14S.                    Filed December 21, 2016.


Edgar David Brown, pro se.

<u>Nicholas R. Rosado</u>, for respondent.


SUMMARY OPINION


VASQUEZ, <u>Judge</u>:  This case was heard pursuant to the provisions of

section 7463[1] of the Internal Revenue Code in effect when the petition was filed.

---

[1]  Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect for the year in issue, and all Rule references are to the Tax
Court Rules of Practice and Procedure.

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency in petitioner's 2010 Federal income tax of $8,994, an addition to tax under section 6651(a)(1) of $2,172, and an accuracy-related penalty under section 6662(a) of $1,798.80. At the time the petition was timely filed, petitioner resided in California. After concessions,[2] the issues for decision are:

(1) whether petitioner is entitled to deduct expenses reported on a Schedule C, Profit or Loss From Business;

(2) whether petitioner is entitled to deduct expenses reported on a Schedule A, Itemized Deductions, in excess of the amounts respondent allowed;

(3) whether petitioner is entitled to a deduction for job search costs;

(4) whether petitioner is liable for an addition to tax under section 6651(a)(1) for failure to file a timely return; and

(5) whether petitioner is liable for an accuracy-related penalty under section 6662(a) and (b)(1) and (2).

---

[2] Petitioner is no longer claiming a home mortgage interest deduction. Petitioner and respondent agree that petitioner is entitled to a deduction of $228.05 for tax preparation fees. For some of the items at issue, both parties have made partial concessions. We address these partial concessions in the body of this opinion.

Background

I.    Petitioner's Professional Background and Employment

Petitioner is a financial services professional with employment experience at HSBC, First Union Bank, and Citigroup.  In July 2007 petitioner accepted a financial services position with the Metropolitan Transportation Commission (MTC), a quasi-governmental agency that funds transportation projects throughout the San Francisco area.  During 2010 petitioner worked for MTC as a project manager.

MTC had a written policy for reimbursing employees for their work-related expenses for the year in issue.  MTC's written reimbursement policy had provisions covering, among other things, overnight travel, parking, and meals. Additionally, MTC's written reimbursement policy covered expenses not specifically listed where "a staff member finds it impossible to use MTC's office services and still complete his/her official business assignment in a timely manner."

II.    Equity Investors International, Inc.

One of the reasons petitioner accepted MTC's employment offer in 2007 was that it would allow him to devote time to Equity Investors International, Inc. (EII), a check cashing business in Sacramento, California.  During the year in

issue petitioner had an ownership interest in EII, a corporation organized in California. EII is classified as a C corporation for Federal tax purposes.

In 2008 EII's check cashing business significantly declined, and the corporation filed a bankruptcy petition the following year. Nonetheless, EII continued to do business in 2010. As EII's principal and CEO, petitioner oversaw its operations while attempting to find a buyer for the corporation or wind it down. Petitioner was unable to sell EII, and the corporation's bankruptcy proceeding was closed on July 8, 2010.

EII did not file a Federal income tax return for the 2010 tax year.

III.    Petitioner's Job Search

Recognizing that EII's prospects were unfavorable, petitioner began looking for a new financial services job in 2010. Before 2007 petitioner's average income was between $200,000 and $250,000 per year. Petitioner, who received a salary of $99,500 from MTC, wanted to return to that income level. During the year in issue he traveled to Los Angeles, Philadelphia, and Durham for job interviews with Direct Financial Services, UBS, Sony, and Fidelity.

## IV.    ACN

During the fourth quarter of 2010 petitioner began working with ACN, a "multi-level" marketing company.  Petitioner reported neither income nor expenses pertaining to ACN on his 2010 return.

## V.    Julian Brown Memorial Fund

In 2005 petitioner established the Julian Brown Memorial Fund (Memorial Fund) in memory of his deceased son.  From 2005 to 2015 the Memorial Fund sponsored a yearly soccer tournament in Charlotte, North Carolina.  The Memorial Fund qualifies as a charity under section 501(c)(3).  In 2010 petitioner incurred unreimbursed expenses pertaining to the Memorial Fund's Web site.  He also attended the soccer tournament in Charlotte, North Carolina, where he owns a home.

## VI.    Petitioner's Record Maintenance and Computer Malfunction

Petitioner stored his records on a laptop computer, on which he used a Microsoft Outlook calendar to maintain a log of his expenses.  Among the records petitioner stored on his laptop were all of his emails, thousands of documents, and information pertaining to hundreds of appointments.

In February 2011, two to three years after its purchase, petitioner's computer crashed.[3] Thereafter petitioner's friend took the laptop to Best Buy for diagnosis and repair. Petitioner learned that the laptop could not be fixed. He also learned that his data, including the emails[4] he had downloaded onto his laptop, could not be recovered.

## VII.   Petitioner's Tax Return

Petitioner filed his Form 1040, U.S. Individual Income Tax Return, for the 2010 tax year on May 9, 2012. Petitioner received a Form W-2, Wage and Tax Statement, from MTC and reported his salary on the return. On his Schedule A petitioner claimed itemized deductions of $8,151 for home mortgage interest, $7,110 for taxes paid, and $7,719 for gifts to charity. In addition, petitioner claimed itemized deductions of $5,128 for unreimbursed employee expenses, $1,103 for tax preparation fees, and $13,093 for "Other expenses". On a miscellaneous itemized deductions statement attached to the tax return, petitioner

---

[3] At trial petitioner testified that his computer was "probably about two years old" at the time it malfunctioned. On brief petitioner suggests that it may have been three years old.

[4] Petitioner maintained an AOL email account. Because petitioner used a "POP" protocol rather than an "IMAP" one, his emails were deleted from AOL's server when he downloaded them onto his computer. He was therefore unable to retrieve his emails from AOL after his laptop died.

allocated "Other expenses" as follows: (1) $12,101 for attorney and accounting fees, (2) $604 for magazines and publications, and (3) $388 for telephone and postage. Petitioner did not seek reimbursement from MTC for any of these expenses.

Petitioner also attached to his return a Schedule C, which listed "Equity Investors Group" as a business engaged in "Direct Sales". Petitioner reported no gross income on the Schedule C and claimed the following expenses: (1) $690 for advertising, (2) $4,591 for car and truck expenses, (3) $3,980 for legal and professional services, and (4) $2,758 for travel. These claimed expenses relate to EII.

## VIII. Notice of Deficiency

On February 10, 2014, respondent issued a notice of deficiency to petitioner for the 2010 tax year. Respondent disallowed all of the expense deductions claimed on petitioner's Schedule C. Respondent also disallowed petitioner's Schedule A deductions for home mortgage interest, charitable contributions, unreimbursed employee expenses, tax preparation fees, and "Other expenses".

Discussion

I.   Preliminary Matters

Petitioner attached to his opening brief 12 exhibits consisting of summaries of credit card and bank statements already in evidence, another copy of a charitable auction invoice already in evidence, and an IRS publication.  Petitioner has not filed a motion to reopen the record.  Respondent objects to these documents on the grounds that they are self-serving, not part of the record, and contrary to the record.[5]

Reopening the record for the submission of additional evidence lies within the discretion of the Court.  Butler v. Commissioner, 114 T.C. 276, 286-287 (2000).  The policy of the Court is to try all of the issues raised in a case in one proceeding to avoid piecemeal and protracted litigation.  Markwardt v. Commissioner, 64 T.C. 989, 998 (1975).

Petitioner was given ample opportunity to provide evidence both before and at trial, and he did not introduce the proposed exhibits.  Furthermore, almost all of the proposed exhibits are summaries of credit card and bank statements that are already in evidence.  Under such circumstances, we decline to receive additional evidence.

---

[5]  We note that respondent did not file a motion to strike under Rule 143.

## II.    Burden of Proof

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that the determinations are erroneous.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  The burden of proof shifts to the Commissioner, however, if the taxpayer produces credible evidence to support the deduction or position, the taxpayer complied with the substantiation requirements, and the taxpayer cooperated with the Secretary[6] with regard to all reasonable requests for information.  Sec. 7491(a); see also Higbee v. Commissioner, 116 T.C. 438, 440-441 (2001).

Petitioner does not contend that section 7491(a) should shift the burden here, and the record establishes that he has not satisfied that section's requirements.  Consequently, petitioner bears the burden of proof as to any disputed factual issue.  See Rule 142(a).

---

[6] The term "Secretary" means "the Secretary of the Treasury or his delegate", sec. 7701(a)(11)(B), and the term "or his delegate" means "any officer, employee, or agency of the Treasury Department duly authorized by the Secretary of the Treasury directly, or indirectly by one or more redelegations of authority, to perform the function mentioned or described in the context", sec. 7701(a)(12)(A)(i).

III.    General Principles Governing Substantiation

Deductions are a matter of legislative grace, and a taxpayer is required to maintain records sufficient to substantiate deductions claimed on his or her return. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.; see New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  If the taxpayer is able to establish that he or she paid or incurred a deductible expense but is unable to substantiate the precise amount, the Court generally may approximate the deductible amount, but only if the taxpayer presents sufficient evidence to establish a rational basis for making the estimate (Cohan rule).  See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); see also Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). Certain business expenses described in section 274 are subject to rules of substantiation that supersede the Cohan rule.  Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), aff'd, 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

IV.    Section 162 Expenses

A.    General Principles

Section 162 allows a taxpayer to deduct all ordinary and necessary expenses paid or incurred by the taxpayer in carrying on a trade or business; but personal, living, or family expenses are not deductible.  Secs. 162(a), 262.  An expense is

"ordinary" if it is "normal, usual, or customary" in the taxpayer's trade or business.  See Deputy v. du Pont, 308 U.S. 488, 495 (1940).  An expense is "necessary" if it is "appropriate and helpful" in the taxpayer's business, but it need not be absolutely essential.  Commissioner v. Tellier, 383 U.S. 687, 689 (1966) (citing Welch v. Helvering, 290 U.S. at 113).  Whether an expense is deductible pursuant to section 162 is a question of fact to be decided on the basis of all relevant facts and circumstances.  Cloud v. Commissioner, 97 T.C. 613, 618 (1991) (citing Commissioner v. Heininger, 320 U.S. 467, 473-475 (1943)).

B.     Expenses Pertaining to EII

On his Schedule C petitioner claimed deductions for travel, legal and professional services, and car and truck expenses he incurred on behalf of EII.  On his Schedule A petitioner also claimed a deduction of $12,101 for legal and accounting fees incurred on behalf of EII.  However, at trial petitioner testified that he had incurred only $2,437.50 in accounting fees.  Petitioner argues on brief that these fees pertained to the recovery of EII's outstanding payables and the mitigation of its bankruptcy losses.  Petitioner argues that he can deduct his EII-related payments because he paid them and because the corporation did not file an income tax return for 2010.  Respondent argues that petitioner cannot claim

personal deductions for the payment of corporate expenses. We agree with respondent for the reasons stated below.

The corporate form allows businesses "to gain an advantage under the law of the state of incorporation". Moline Props., Inc. v. Commissioner, 319 U.S. 436, 438 (1943). Where a taxpayer adopts the corporate form, and "so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity." Id. at 439. Accordingly, officers, employees, or shareholders may not deduct the payment of corporate expenses on their individual returns. Deputy v. Du Pont, 308 U.S. at 494-495; Rink v. Commissioner, 51 T.C. 746, 751 (1969). Such payments constitute either capital contributions or loans to the corporation and are deductible, if at all, only by the corporation. Rink v. Commissioner, 51 T.C. at 751. A deduction is allowable only if the expenditures are made to protect or promote another trade or business of the shareholder. See Gould v. Commissioner, 64 T.C. 132, 135 (1975).

Petitioner does not dispute that: (1) he had an ownership interest in EII during the year in issue, (2) EII was a C corporation engaged in the business of check cashing, and (3) petitioner's Schedule C deductions and Schedule A deduction for legal and accounting fees were based on payments made on behalf

of EII. Nothing in the record indicates that petitioner incurred these expenses to protect or promote another trade or business he maintained. Accordingly, petitioner cannot deduct his EII-related expenses on his return as they are deductible only, if at all, by the corporation. See Rink v. Commissioner, 51 T.C. at 751. We therefore sustain respondent's disallowance of petitioner's Schedule C deductions and Schedule A deduction for legal and accounting fees.

C.      Unreimbursed Employee Business Expenses

On his Schedule A petitioner claimed a deduction of $5,128 for unreimbursed employee business expenses. At trial petitioner submitted bank statements, credit card statements, and a summary thereof for the purpose of substantiating $979.48 of these expenses. Petitioner generally argues that these expenses are deductible because they were mandatory expenses that MTC did not reimburse. Respondent argues that petitioner is not entitled to the deduction because petitioner failed to seek reimbursement despite his right to do so under MTC's reimbursement policy. For the reasons stated below we sustain respondent's determination with respect to these expenses.

Section 162 allows a taxpayer to deduct all ordinary and necessary expenses paid or incurred by the taxpayer in carrying on a trade or business, including expenses paid or incurred as an employee. Lucas v. Commissioner, 79 T.C. 1, 6

(1982).  Expenses are not "necessary" under section 162 when an employee fails to claim reimbursement for expenses incurred in the course of his employment when entitled to do so.  Orvis v. Commissioner, 788 F.2d 1406, 1408 (9th Cir. 1986), aff'g T.C. Memo. 1984-533.  Accordingly, a taxpayer cannot deduct employee business expenses to the extent he is entitled to reimbursement from his employer for an expenditure related to his status as an employee.  See Lucas v. Commissioner, 79 T.C. at 7.  Deductions for such expenses belong to the employer.  See Kennelly v. Commissioner, 56 T.C. 936, 943 (1971), aff'd without published opinion, 456 F.2d 1335 (2d Cir. 1972).

The taxpayer bears the burden of proving that he is not entitled to reimbursement from his employer for such expenses.  See Fountain v. Commissioner, 59 T.C. 696, 708 (1973).  The taxpayer can prove that he was not entitled to reimbursement by, for example, showing that he was expected to bear these costs.  See id.; see also Dunkelberger v. Commissioner, T.C. Memo. 1992-723 (finding that management team expected taxpayer to bear expense of business lunches with vendors).  Where the taxpayer's employer has a reimbursement policy that covers the expenses, the taxpayer must show that he sought reimbursement from his employer for the expenses.  Orvis v. Commissioner, 788 F.2d at 1408.

Petitioner argues that MTC's unofficial policy did not provide for reimbursement of his employee business expenses for meals, parking, travel, and equipment. However, we have reviewed MTC's written reimbursement policy and find that it covers reimbursement for meals, parking, travel, and equipment. Since all of petitioner's employee expenses are covered by the written reimbursement policy, petitioner must show that he sought reimbursement from MTC. See id. Petitioner has neither made such a showing nor offered credible evidence to corroborate his testimony that MTC's actual reimbursement policy differed from its written one. We therefore sustain respondent's disallowance of petitioner's Schedule A deduction for employee business expenses.

D.     Job Search Expenses

Petitioner did not claim a deduction for job search expenses on his return. However, at trial and on brief he claimed he was entitled to a deduction of $4,736.79 for such expenses.[7] Petitioner's job search expenses included expenses incurred for travel, credit monitoring, publications and books, and photographs. Respondent argues that petitioner has not adequately substantiated any of these expenses. We hold for respondent in part and petitioner in part.

---

[7] While petitioner did not raise his claimed job search expenses in his petition, we find that this issue was tried by consent. See Rule 41(b).

Section 162(a) allows a taxpayer to deduct expenses incurred in searching for new employment within the same trade or business. See Primuth v. Commissioner, 54 T.C. 374, 378-379 (1970). Job search expenses include résumé preparation expenses, postage, and travel and transportation expenses. See Murata v. Commissioner, T.C. Memo. 1996-321.

Traveling expenses are subject to the strict substantiation requirements of section 274(d). To deduct such items, the taxpayer must substantiate through adequate records or other corroborative evidence the following elements: the amount of the expense, the time and place of the expense, and the business purpose of the expense. Sec. 274(d). A taxpayer satisfies the "adequate records" test if he or she maintains an account book, a diary, a log, a statement of expense, trip sheets, or similar records prepared at or near the time of the expenditures, such as receipts or bills, that show each element of each expenditure or use. See sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985). Contemporaneous logs are not required, but corroborative evidence to support a taxpayer's reconstruction of the elements of an expenditure or use must have "a high degree of probative value to elevate such statement" to the level of credibility of a contemporaneous record. Id. subpara. (1), 50 Fed. Reg. 46016-46017.

In the absence of adequate records to establish each element of an expense under section 274(d), a taxpayer may alternatively establish each element: "(A) By his own statement, whether written or oral, containing specific information in detail as to such element; and (B) By other corroborative evidence sufficient to establish such element." Sec. 1.274-5T(c)(3)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46020 (Nov. 6, 1985).

Section 274(d) was intended to preclude use of the Cohan rule for the expense categories it covers. Sanford v. Commissioner, 50 T.C. at 828. However, if a taxpayer's records have been destroyed or lost because of circumstances beyond his or her control, the taxpayer may substantiate expenses subject to section 274(d) by making a reasonable reconstruction of the expenditures through other credible evidence. Boyd v. Commissioner, 122 T.C. 305, 320 (2004); Furnish v. Commissioner, T.C. Memo. 2001-286; sec. 1.274-5T(c)(5), Temporary Income Tax Regs., 50 Fed. Reg. 46022 (Nov. 6, 1985). The burden is on the taxpayer to show that the documentation was actually lost or destroyed because of circumstances beyond his or her control. See Adler v. Commissioner, T.C. Memo. 2010-47, aff'd, 443 F. App'x 736 (3d Cir. 2011).

A taxpayer is required to reconstruct pertinent records to the fullest extent possible. See, e.g., Chong v. Commissioner, T.C. Memo. 2007-12. If no other

documentation is available, the Court may, but is not obliged to, accept credible testimony of a taxpayer to substantiate a deduction. See Boyd v. Commissioner, 122 T.C. at 320 (citing Watson v. Commissioner, T.C. Memo. 1988-29); Freeman v. Commissioner, T.C. Memo. 2009-213. The Cohan rule comes back into play in these circumstances. See Scully v. Commissioner, T.C. Memo. 2013-229, at *17.

Respondent argues that petitioner is not eligible for the job search expenses deduction because he failed to establish that he was seeking a job in 2010. With respect to petitioner's job search expenses for travel (job search travel expenses), respondent argues that petitioner is subject to the strict substantiation requirements of section 274 because he has not established that his records were lost. Respondent further argues that petitioner has not substantiated his job search travel expenses. We disagree with respondent for the reasons stated below.

First, petitioner's testimony that he was searching for new employment in the same trade or business during the year in issue is credible. Petitioner credibly testified that: (1) his position at MTC involved financial services, (2) MTC paid him less than his prior employers had, (3) EII's business prospects were bleak, and (4) he was seeking another financial services job to increase his income. Accordingly, petitioner is entitled to deduct those job search expenses he can substantiate.

Second, we find credible petitioner's testimony that he maintained adequate records that were lost through circumstances beyond his control. Petitioner credibly testified that he kept extensive records, including a contemporaneous log of his expenses, on a Microsoft Outlook calendar. He also credibly testified that the catastrophic computer failure he suffered was unexpected given that the laptop was approximately two to three years old. To corroborate this testimony, petitioner brought his defunct laptop to the trial. Accordingly, petitioner can substantiate his travel expenses by a reasonable reconstruction. See Boyd v. Commissioner, 122 T.C. at 320; sec. 1.274-5T(c)(5), Temporary Income Tax Regs., supra.

Third, petitioner adequately substantiated his travel expenses through a reasonable reconstruction of his records. See Boyd v. Commissioner, 122 T.C. at 320; sec. 1.274-5T(c)(5), Temporary Income Tax Regs., supra. Petitioner submitted credit card statements for two CitiGold accounts and bank statements for two Bank of America accounts. He also obtained from the airlines several electronic flight confirmations that correspond with the charges reflected on his bank and credit card statements. Using these documents, petitioner prepared an expense summary which was admitted at trial. Along with petitioner's credible testimony that he traveled for various interviews, the credit card statements, bank

statements, travel itineraries, and summary constitute a reasonable reconstruction of his records. After reviewing these documents, we find that petitioner incurred job search travel expenses of $3,661.

Conversely, petitioner is not entitled to a deduction for credit monitoring, publication, and photography expenses that he claims to have incurred in his job search. We agree with respondent that petitioner did not provide any testimony or other evidence as to how these expenditures related to his job search. We therefore find that petitioner is entitled to a total deduction for job search expenses of $3,661.

E.     Telephone, Postage, and Wireless Expenses

On his Schedule A petitioner claimed a deduction of $388 for telephone and postage expenses, all of which respondent disallowed. At trial petitioner asserted that he had incurred additional telephone and postage expenses of $100.20. To substantiate these expenses, petitioner submitted bank statements and a summary thereof.[8] Petitioner also submitted bank statements and a summary thereof for the

---

[8] On brief petitioner argues that he is entitled to a larger deduction of $1,334.92 for telephone and postage expenses.

purpose of substantiating an additional expense of $4,264.99 for "professional services" provided by Verizon Wireless (wireless expenses).[9]

Petitioner generally argues that he is entitled to a deduction for his telephone, postage, and wireless expenses because he incurred them in connection with his various business ventures. We disagree.

Petitioner was engaged in four business activities in 2010: (1) work performed as an owner and officer of EII, (2) work performed as an employee of MTC, (3) work performed in connection with his business relationship with ACN, and (4) his job search. As stated earlier, petitioner cannot deduct in his individual capacity any telephone, postage, and wireless expenses attributable to EII. See supra pp. 11-13. Furthermore, he cannot deduct the expenses attributable to MTC because he failed to request reimbursement pursuant to MTC's reimbursement policy. See supra pp. 13-15.

We therefore consider only expenses attributable to petitioner's job search and work with ACN, the latter of which did not commence until the fourth quarter of 2010. At trial petitioner neither testified nor submitted other evidence specifying what amount of his telephone, postage and wireless expenses were

_____

[9] Petitioner testified that Verizon provided him with "cellular, voice-over-IP, cloud-based computer and storage, wireless broadband, Internet access, mobile phone communication, text messaging, and cloud-based storage."

attributable to his job search or ACN. Since there is insufficient evidence to establish a rational basis for making an estimate of the deductible amount of telephone, postage, and wireless expenses paid in 2010, we will not allow petitioner a deduction for these expenses. See Cohan v. Commissioner, 39 F.2d at 543-544.

F.    Automobile Expenses

Petitioner claims that he used his vehicle 49.23% for "business" purposes and seeks a deduction of $7,673.63. For the above-stated reasons, we consider only petitioner's automobile expenses attributable to his job search and work with ACN.

At trial petitioner neither testified nor submitted other evidence specifying what amount of his automobile use was attributable to his job search or ACN. Since there is insufficient evidence to establish a rational basis for making an estimate of the deductible amount of automobile expenses paid in 2010, we will not allow petitioner a deduction for these expenses. See Vanicek v. Commissioner, 85 T.C. at 742-743.

G.    Magazines and Publications

On his Schedule A petitioner claimed a deduction of $604 for magazine and publication expenses, all of which respondent disallowed. At trial petitioner

submitted bank statements and a summary thereof for the purpose of substantiating $270.06 of these expenses. The bank statements and summaries reflect payments made to "Barnes and Noble Subscriptions" and Sirius Radio, the latter of which petitioner concedes was not properly deductible. Petitioner testified that "Barnes and Noble Subscriptions" referred to magazines such as Fortune, the Economist, and American Banker. Petitioner did not explain how these purchases were related to his business ventures and therefore failed to establish that these expenditures were not personal. See sec. 262(a). Accordingly, we sustain respondent's disallowance.

V.     State and Local Taxes

On his Schedule A petitioner claimed a deduction of $2,870 for State and local income taxes. Respondent did not disallow this deduction. However, at trial petitioner asserted that he had paid additional taxes to North Carolina that were not reported on his Schedule A.[10] Respondent argues that petitioner failed to establish that the amount of State and local income taxes reported on his Schedule A did not include the North Carolina tax payments. We hold that petitioner is

_____

[10] While petitioner did not raise this issue in his petition, we find that it was tried by consent. See Rule 41(b).

entitled to an additional deduction for State and local income taxes for the reasons stated below.

Section 164(a)(3) provides that State and local income taxes are allowed as a deduction for the taxable year within which they are paid or accrued. At trial petitioner submitted bank statements reflecting 10 electronic payments to the North Carolina Department of Revenue each in the amount of $100.63 from March through December 2010. We accept petitioner's credible testimony that the State and local income tax payments reported on his Schedule A did not include these electronic payments. Accordingly, petitioner is entitled to an additional deduction of $1,006.30 for State and local income taxes.

VI.    Charitable Contributions

On his Schedule A petitioner claimed a deduction for charitable cash contributions of $7,719, all of which respondent disallowed for lack of substantiation. At trial petitioner submitted bank statements, credit card statements, and other documents for the purpose of substantiating $3,720.25 of these contributions. Of that amount, petitioner seeks to deduct $1,305 for cash payments to an elementary school; $430.55 for unreimbursed expenses incurred in maintaining a Web site; and $1,984.70 for unreimbursed travel, meals and entertainment, and car and truck expenditures. Respondent has conceded that

petitioner can deduct $50 for expenses relating to the Web site, leaving $3,670.25 in dispute.

A. Cash Contributions to Saint Joseph School

Petitioner seeks to deduct $1,305 for cash payments to Saint Joseph School. These amounts reflect (1) a cash payment of $600 for a student-made blanket purchased at a silent auction fundraiser and (2) cash contributions of $705. For the reasons stated below we sustain respondent's disallowance with respect to these items.

In general, a taxpayer is entitled to deduct charitable contributions made during the taxable year to or for the use of certain types of organizations. Sec. 170(a)(1), (c). A taxpayer is required to substantiate charitable contributions; records must be maintained. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs. A cash contribution of less than $250 may be substantiated with a canceled check, a receipt, or other reliable evidence showing the name of the donee, the date of the contribution, and the amount of the contribution. Sec. 1.170A-13(a)(1), Income Tax Regs. Contributions of cash or property of $250 or more generally require the donor to obtain a contemporaneous written acknowledgment of the donation from the donee. Sec. 170(f)(8)(A); Villareale v. Commissioner, T.C. Memo. 2013-74. At a minimum, the contemporaneous written acknowledgment must contain a

description of any property contributed, a statement as to whether any goods or services were provided in consideration by the donee, and a description and good-faith estimate of the value of any goods or services provided in consideration. Sec. 170(f)(8)(B). A written acknowledgment is contemporaneous if it is obtained by the taxpayer on or before the earlier of (1) the date on which the taxpayer files a return for the taxable year in which the contribution was made, or (2) the due date (including extensions) for filing such return. Sec. 170(f)(8)(C).

### 1. Blanket Purchased at Auction

To substantiate the claimed $600 contribution to Saint Joseph School, petitioner submitted a picture of the blanket. A contemporaneous written acknowledgment from Saint Joseph School is required because this contribution is greater than $250. See sec. 170(f)(8). Because petitioner did not produce one, we must sustain respondent's disallowance.

### 2. Additional Cash Contributions

To substantiate cash contributions of $705 to Saint Joseph School, petitioner submitted a photocopy of a receipt entitled "PTG Auction Invoice" with the name and address of Saint Joseph School at the top. Even if we were to assume that petitioner made several cash donations in amounts less than $250, this document does not adequately substantiate the reported cash donations. While it

bears the name of the donee, it shows neither the dates nor amounts of the donations. We therefore sustain respondent's disallowance.

B. Unreimbursed Volunteer Expenses

No deduction is allowed under section 170 for a contribution of services. However, "unreimbursed expenditures made incident to the rendition of services to an organization contributions to which are deductible may constitute a deductible contribution." Sec. 1.170A-1(g), Income Tax Regs. To be deductible, unreimbursed expenses must be directly connected with and solely attributable to the rendition of services to a charitable organization. Van Dusen v. Commissioner, 136 T.C. 515, 525 (2011); Saltzman v. Commissioner, 54 T.C. 722, 724 (1970). "In applying this standard, courts have considered whether the charitable work caused or necessitated the taxpayer's expenses." Van Dusen v. Commissioner, 136 T.C. at 525.

Contributions through the payment of unreimbursed volunteer expenses of less than $250 are subject to the requirements for contributions of money set forth in section 1.170A-13(a), Income Tax Regs. Van Dusen v. Commissioner, 136 T.C. at 531. Section 1.170A-13(a)(1), Income Tax Regs., requires the taxpayer to maintain a canceled check or a receipt from the donee organization. In the absence of a canceled check or a receipt from the donee organization, the taxpayer

must maintain other reliable written records showing "the name of the payee, the date of the payment, and the amount of the payment." Van Dusen v. Commissioner, 136 T.C. at 534; see also sec. 1.170A-13(a)(1), Income Tax Regs.

Unreimbursed volunteer expenses of $250 or more must also be substantiated with a contemporaneous written statement from the donee organization containing, among other things, a description of the services that the taxpayer provided. See Van Dusen v. Commissioner, 136 T.C. at 536-537; sec. 1.170A-13(f)(10), Income Tax Regs.

1. Web Site Costs

Petitioner claims to have paid $430.55 to maintain the Memorial Fund's Web site. Respondent has conceded $50 of these expenses but argues that petitioner has failed to substantiate the remaining $380.55. We hold for petitioner in part and respondent in part. To substantiate his Web site expenses, petitioner submitted bank statements and a summary thereof. In addition to $40 and $10 payments respondent allowed, the statements reflect two payments of $29.95 to "Edynamo Website Servic". We find these reported expenditures to be "directly connected with and solely attributable to the rendition of services to a charitable organization" because petitioner incurred them to promote the Memorial Fund. See Van Dusen v. Commissioner, 136 T.C. at 525. Since the bank statements

show the date and amount of the contribution and the name of the payee, petitioner can deduct these two payments. See id. at 534.

However, we sustain respondent's disallowance of a claimed Web site expense of $60.65, which appears to be a restaurant charge. We also sustain respondent's disallowance of a $260 payment to "Edynamo Website Servic" because this payment exceeds $250 and petitioner failed to provide a contemporaneous written statement from the Memorial Fund. Accordingly, petitioner is entitled to a total charitable deduction of $109.90 ($50 + $29.95 + 29.95) with respect to his unreimbursed Web site expenses.

### 2. Travel, Meals, and Entertainment

Petitioner argues he is entitled to deduct unreimbursed expenses for air travel, hotels, and meals he incurred in connection with a North Carolina soccer tournament sponsored by the Memorial Fund. Respondent argues that petitioner failed to show that such expenditures were made incident to the rendition of services to a charitable organization. We agree with respondent for the reasons stated below.

A taxpayer may deduct "out-of-pocket transportation expenses necessarily incurred in performing donated services". Sec. 1.170A-1(g), Income Tax Regs. However, section 170(j) provides that no deduction is allowed "for traveling

expenses (including amounts expended for meals and lodging) while away from home, whether paid directly or by reimbursement, unless there is no significant element of personal pleasure, recreation, or vacation in such travel." As this Court has stated: "[T]ravel expenditures which include a substantial, direct, personal benefit * * * are not deductible." Tafralian v. Commissioner, T.C. Memo. 1991-33; see also Babilonia v. Commissioner, 681 F.2d 678, 679 (9th Cir. 1982), aff'g T.C. Memo. 1980-207.

Petitioner failed to establish that his travel to North Carolina involved "no significant element of personal pleasure, recreation, or vacation in such travel." See sec. 170(j). While he credibly testified that he established the Memorial Fund and its soccer tournament in 2005, petitioner did not specify what he did for the 2010 tournament or how much time he devoted to it. Without this information, we cannot conclude that petitioner's trip to North Carolina, where he owns a home, was directly connected with and solely attributable to services performed at the tournament. We therefore sustain respondent's disallowance of petitioner's deduction for charitable travel, meals, and entertainment.

3. Automobile Expenses

Petitioner claims that he used his vehicle 3.76% for charitable purposes during 2010 and seeks a deduction of $586.57. However, petitioner failed to

establish that his automobile expenses were directly connected with and solely attributable to the rendition of services to the Memorial Fund. See Van Dusen v. Commissioner, 136 T.C. at 525; Saltzman v. Commissioner, 54 T.C. at 724. At trial petitioner did not explain how his volunteer work for the Memorial Fund necessitated use of his automobile. Accordingly, he is not entitled to this deduction.

VII.   Section 6651(a)(1)

Respondent determined that petitioner is liable for an addition to tax under section 6651(a)(1) for failure to file a timely return. Petitioner, who concedes that he filed his return after it was due, argues that he is not liable because he acted with reasonable cause.[11]

Section 6651(a)(1) imposes an addition to tax for failure to file a return when due "unless it is shown that such failure is due to reasonable cause and not due to willful neglect". The addition equals 5% of the amount required to be shown as tax on a return for each month that the return is late, not to exceed 25% in total. The Commissioner has the burden of production with respect to the liability of an individual for an addition to tax under section 6651(a)(1). Sec.

---

[11] While petitioner did not address his liability for the addition to tax in his petition, we find that this issue was tried by consent. See Rule 41(b).

7491(c). The burden of showing reasonable cause under section 6651(a) remains on the taxpayer. Higbee v. Commissioner, 116 T.C. at 438. To show reasonable cause, taxpayers must demonstrate that they exercised ordinary business care and prudence but nevertheless were unable to file their income tax returns by their due dates. See United States v. Boyle, 469 U.S. 241, 246 (1985); sec. 301.6651-1(c), Proced. & Admin. Regs. Willful neglect is defined as a "conscious, intentional failure or reckless indifference." Boyle, 469 U.S. at 245.

Respondent has met his burden because petitioner filed his return late for the year in issue. Petitioner, who bears the burden of persuasion, has failed to establish that his failure to file a timely return was due to reasonable cause. We are not persuaded by petitioner's argument that his computer malfunction and data loss constitute reasonable cause. Petitioner's computer malfunction occurred in February 2011, several months before the extended deadline for filing his 2010 return. Petitioner's bank and credit card statements, which he introduced at trial to substantiate his deductions, remained available to him. Because petitioner had more than enough time to retrieve these records before the filing deadline, we cannot conclude he exercised ordinary business care and prudence with respect to his return preparation.

Accordingly, we hold that petitioner is liable for an addition to tax under section 6651(a)(1), which the parties shall compute in their Rule 155 calculations.

VIII. Accuracy-Related Penalty

Respondent argues that petitioner is liable for an accuracy-related penalty under section 6662(a) and (b)(1) and (2) for either negligence or disregard of rules or regulations or for a substantial understatement of income tax. Petitioner argues that he is not liable because he acted with reasonable cause.[12]

Pursuant to section 6662(a) and (b)(1) and (2), a taxpayer may be liable for a penalty of 20% on the portion of an underpayment of tax attributable to: (1) negligence or disregard of rules or regulations or (2) a substantial understatement of income tax. Whether applied because of a substantial understatement of income tax or negligence or disregard of rules or regulations, the accuracy-related penalty is not imposed with respect to any portion of the underpayment as to which the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c)(1). The decision as to whether the taxpayer acted with reasonable cause and in good faith depends upon all the pertinent facts and circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor is the extent of the

---

[12] While petitioner did not address his liability for the accuracy-related penalty in his petition, we find that this issue was tried by consent. See Rule 41(b).

taxpayer's effort to assess his or her proper tax liability. Humphrey, Farrington & McClain, P.C. v. Commissioner, T.C. Memo. 2013-23; sec. 1.6664-4(b)(1), Income Tax Regs.

The term "negligence" in section 6662(b)(1) includes any failure to make a reasonable attempt to comply with the Internal Revenue Code and any failure to keep adequate books and records or to substantiate items properly. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. Negligence has also been defined as the failure to exercise due care or the failure to do what a reasonable person would do under the circumstances. See Allen v. Commissioner, 92 T.C. 1, 12 (1989), aff'd, 925 F.2d 348, 353 (9th Cir. 1991); see also Neely v. Commissioner, 85 T.C. 934, 947 (1985). The term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c).

The Commissioner has the burden of production with respect to the accuracy-related penalty. Sec. 7491(c). To meet this burden, the Commissioner must produce sufficient evidence indicating that it is appropriate to impose the penalty. See Higbee v. Commissioner, 116 T.C. at 446. Once the Commissioner meets this burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect. Rule 142(a); see Higbee v. Commissioner, 116 T.C. at 447. The taxpayer may meet this burden by

proving that he or she acted with reasonable cause and in good faith with respect to the underpayment. See sec. 6664(c)(1); see also Higbee v. Commissioner, 116 T.C. at 447; sec. 1.6664-4(b)(1), Income Tax Regs.

Respondent satisfied his burden of production with regard to negligence. Respondent established that petitioner: (1) did not substantiate several items properly, (2) incorrectly claimed deductions for corporate expenses on a Schedule C, and (3) incorrectly claimed deductions for unreimbursed employee expenses. Petitioner, who bears the burden of persuasion, has not come forward with sufficient evidence that respondent's determination is incorrect.

We are not persuaded by petitioner's argument that the computer malfunction he experienced in February 2011 constitutes reasonable cause. When he filed his return, petitioner had access to the bank statements and credit card statements he used at trial to substantiate his expenses. Nevertheless, petitioner prepared his return "largely from memory". Petitioner's course of action does not reflect a good-faith effort to assess his proper tax liability. We therefore hold that petitioner is liable for a section 6662(a) accuracy-related penalty, which the parties shall compute in their Rule 155 calculations.

In reaching our conclusions, we have considered all arguments made by the parties and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.